Argued and submitted November 19, 1990, affirmed February 27, 1991

**STATE OF OREGON,**
*Respondent,*

*v.*

**DAVID ALAN LAND,**
*Appellant.*

(89-490; CA A63033)

806 P2d 1156

Wm. Timothy Lyons, Oregon City, argued the cause and filed the brief for appellant.

Jas. Adams, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

RIGGS, J.

**RIGGS, J.**

Defendant appeals his conviction for possession and manufacture of a controlled substance. ORS 475.992. He assigns error to the trial court's denial of his motion to suppress. We affirm.

Deputy Poppen received information from a confidential reliable informant who had made marijuana purchases from defendant at his residence and had smelled growing marijuana on the premises. Poppen determined that defendant's residence had "extremely high power usage" that was consistent with growing marijuana and that the house did not have electric heat or a swimming pool that could explain the increased electric consumption. Poppen included that information in an affidavit in support of a search warrant application. When the judge declined to sign the warrant, Poppen went to defendant's home to obtain additional information and to "get his consent to search."

Later that morning, Poppen began surveillance of defendant's residence. He saw defendant drive his pickup truck up the driveway, back it up to the garage, open the garage door and begin "loading some things into the truck from [the] garage area." Poppen believed that defendant was dismantling and trying to remove a marijuana growing operation from his residence, because defendant's business partner had been arrested for marijuana-related offenses the night before.[1] Defendant went inside the house, and Poppen radioed for assistance. Sergeant Tuley arrived shortly thereafter. The two plainclothes officers went up to defendant's front door, walking by an open garage door. They intended to "knock and talk" with defendant and to "advise him [they] were aware there was a marijuana grow there and attempt to obtain his consent to seize his marijuana grow."

They knocked on the front door several times, but no one answered. They heard someone entering the garage from the house through an inner door. The officers walked to the

---

[1] Defendant's business partner, Stevens, had consented to a search of his home and of the business that he co-owned with defendant. Police found a "substantial" marijuana growing operation, growing equipment and drying marijuana. Poppen testified that he "felt that [defendant's] business partner alerted him of the fact we were on to him. We felt there was not much question."

open garage door. As they approached it, they smelled an "almost overpowering" and "very obvious and distinct" smell of growing marijuana. The officers looked in and saw defendant coming out of the door that led from the house into the back of the garage. The officers identified themselves, showed their badges, and told defendant that they wanted to talk to him. Tuley testified that defendant replied, "About what?" or "Okay." Poppen "told him that we were there to seize his marijuana grow" and that they could smell the odor of growing marijuana. Tuley testified that defendant appeared nervous. As defendant walked toward the officers and came nearly to the threshold of the open garage door, the officers stepped approximately three feet into the open garage. Defendant said he wanted to cooperate and asked if the officers had a warrant. Poppen "told him no, we do not have a search warrant but would attempt to obtain one if he didn't give us consent to search the residence." Defendant said "No, I want to cooperate, I'll give you consent."[2]

Poppen testified:

"I read [him] his *Miranda* rights from a prepared card and asked if he understood his rights. He indicated that he understood his *Miranda* rights. I then asked for verbal consent to search the house and seize the marijuana grow. He again gave me consent to search the house and told me that he wished to cooperate.

"* * * * *

"After I was given consent, I went in and did a cursory search of the house to make sure that there was [*sic*] no people inside the house, other people that may be in there that we didn't know about. Then I waited, I had to wait a short period of time for a written consent card to arrive.

"* * * * *

"After obtaining his verbal consent and explaining that he didn't have to give his verbal consent, didn't have to allow us to search, I always cover that up, [*sic*] I get a written consent form. * * * When that arrived, * * * I read the card to [defendant] before I had him sign and date it.

"* * * * *

"I then interviewed [defendant;] * * * he explained to me

---

[2] The officers testified that the exchange took approximately 30 seconds.

that he had a grow in [another house]. I said we're going to want to search that too. He said he was going to cooperate. I'll let you search that also."

The officers found marijuana and other evidence of a growing operation during a search of defendant's houses, and he was arrested.

Defendant moved to suppress the evidence found as a result of the searches. The trial court denied the motion, concluding that, under the totality of circumstances, defendant's consent to search was freely and voluntarily given.

Defendant argues that the officers' warrantless entry into his garage was unlawful. Because the entry was unlawful, he contends, the state has not met its higher burden to show that defendant's consent to search was voluntary.[3] *See State v. Kennedy*, 290 Or 493, 502, 624 P2d 99 (1981). The state contends that the trial court correctly denied the motion to suppress, because the officers' stepping into the garage was a *de minimis* intrusion that did not affect defendant's consent to search, which was voluntary under the totality of the circumstances.

■ We need not decide whether the officers unlawfully entered defendant's garage. Even if their entry was illegal, the evidence found as a result of the search of defendant's house will not be suppressed if defendant's consent to search was valid. We determine the validity of defendant's consent by examining the totality of the facts and circumstances to see

---

[3] Defendant argues that his consent was involuntary, because he "had his back to the wall and was being flanked" by the officers when they asked for his consent to search. On cross-examination, Tuley testified:

"Q. When you entered into the residence here, as I understand it, you entered into the residence, into the garage, and Deputy Poppen was standing to the left of Mr. Land and you were standing to the right of Mr. Land?

"A. Approximately.

"Q. Somewhat, right?

"A. Somewhat, yes.

"Q. So you kind of had him cornered up against this wall, would that be fair to say?

"A. He wasn't right up against the wall, that's where he stopped.

"Q. Okay. But you had him flanked pretty well; is that correct?

"A. We were flanks, yes."

The trial court made no specific findings on this issue.

whether the consent was given by free will or was the result of coercion, express or implied. *State v. Kennedy, supra,* 290 Or at 502.

The trial court made these findings and conclusions:

"On the Motion to Suppress, the Court finds that the officers had a right to be on the porch in the driveway area of the premises in question; that the officers had at least a reasonable suspicion to believe that a crime had been committed with the evidence which pre-existed their coming to the premises as well as the evidence while they were outside the ꞏarea of the garage when they noticed an obvious odor of marijuana coming from the premises when the door was open from the house into the garage.

"If the officers committed a technically illegal act by crossing the threshold of the garage after initial contact of the defendant, the Court finds [that it] had no effect upon the consent given. Entry was no more than three feet into the garage area. The defendant came forward to meet them at that point.

"The Court finds that a stop occurred at that point, not an arrest. Although, I believe from all the evidence, the officers had sufficient evidence at this point probably to effect an arrest. The verbal consent to search was given before Miranda. My understanding of the law presently does not invalidate that consent, under a relying on *State v. Gather* [*sic*], 76 Or App 201[, 708 P2d 646 (1985)].

"The defendant gave several verbal consents before written consent. Miranda was given before the written consent and the actual search. The defendant had plenty of opportunities to withdraw consent at any time, which is something which the officers would have had to abide by.

"The Court finds nothing in the actions of the officers, in the manner in which they handled the defendant while they were on the premises, to indicates [*sic*] that any coerce [*sic*] or undue pressure was utilized by them insofar as the securing of this consent.

"When they indicated they'd get a search warrant if the consent was not given [that] is a true statement which they were fully able to carry out.

"From all the circumstances I find that the consent was freely and voluntarily given and the Motion to Suppress will be denied."

The evidence in the record supports the trial court's factfindings. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968). Further, that evidence supports the court's conclusions that defendant's consent was voluntary.[4]

■     We turn to defendant's argument that the evidence should be suppressed because his consent was the product of the officers' exploitation of their unauthorized entry into the garage. The state contends that there was no exploitation of any illegality, because "the same discussion would have occurred if defendant and the officers had been standing just outside the open garage, instead of one or two steps inside." The state is prohibited from "trading on evidence" that police obtain by virtue of unlawful conduct. *State v. Williamson,* 307 Or 621, 626, 772 P2d 404 (1989). In this case, the discussion that took place did not "trade on" anything obtained as a result of being just inside the threshold of the open garage. The officers had already made their "plain smell" observations outside the garage. They did not observe anything that prompted them to seek defendant's consent to search the premises. Finally, defendant gave his consent after he received *Miranda*-type warnings and after he was informed of his right to refuse to consent to a search. There was no exploitation of illegality. The trial court did not err in denying the motion to dismiss.

     Affirmed.

---

[4] We disagree with defendant's contention that *State v. Freund,* 102 Or App 647, 796 P2d 656 (1990), requires that we conclude that his consent was not voluntary. Unlike in *Freund,* where "the officer's statement told defendant that she had no choice whether a search would occur," Poppen testified that he informed defendant that he had the right to refuse to consent.