WATERMAN, Justice
(concurring specially).
I concur in the result and in all aspects of the well-reasoned majority opinion, except for its blessing of the language in State v. Pals, 805 N.W.2d 767, 783 (Iowa 2011), characterizing traffic stops, as an “inherently coercive” setting for determining whether a citizen’s consent to the search of his vehicle is voluntary. Pals was wrongly decided for the reasons set forth in my dissenting opinion in that case. See Pals, 805 N.W.2d at 788 (Waterman, J., dissenting) (noting the “ ‘temporary and relatively nonthreatening detention involved in a-traffic stop’” (quoting Maryland v. Shatzer, 599 U.S. -, -, 130 S.Ct. 1213, 1224, 175 L.Ed.2d 1045, 1058 (2010))). Today’s majority correctly applies our precedent and Federal Fourth Amendment precedent to uphold Audsley’s consent to search as voluntary.
I would like to respond to my dissenting colleagues. The dissent thinks it “indisputable” that Howard, Reinier, and Randolph, “collectively,” require invalidation of the consent search under article I, section 8 of the Iowa Constitution. This is surprising because none of those cases was decided under a separate analysis of Iowa constitutional law.[13]
Moreover, each of those cases is distinguishable. In State v. Howard, the officer told the defendant that “he was only interested in retrieving the [stolen] property and that if Howard turned it over to the *582 authorities, he would not be prosecuted.” 509 N.W.2d 764, 766 (Iowa 1993). That is quite different from the circumstances surrounding Audsley’s consent to search. No promise of leniency was made to her. State v. Reinier is closer to being on point, as the majority opinion acknowledges, but is still readily distinguishable because the police both “asserted authority to search” and engaged in “deception with no reasonable basis.” 628 N.W.2d 460, 468-69 (Iowa 2001). Here, neither of those factors is present. The police did not state or imply they could search without consent; rather, they asked Audsley whether they could search, and she initially told them no, but later handed them the Del Monte fruit can with the marijuana and pipe. There is also no indication any misrepresentation was made to Audsley. To the contrary, no one disputed the officer told Audsley the truth when he said her friend (who Auds-ley admitted smoked marijuana -with her earlier that day) was in a medical emergency due to a drug overdose. Finally, Georgia v. Randolph draws a “line” that the consent of the only cotenant who is present is valid “[s]o long as there is no evidence that the police have removed the potentially objecting tenant from- the entrance for the sake of avoiding a possible objection.” 547 U.S. 103, 121, 126 S.Ct. 1515, 1527, 164 L.Ed.2d 208, 226-27 (2006). As the majority notes and the dissent does not dispute, there is nothing in the record to suggest the police removed Lowe to forestall his objection to a search.
In short, I do not think Howard, Reinier, and Randolph can be fairly read, even “collectively,” to require invalidation of the initial search in this case. As in Pals, the problem here is not that the existing Fourth Amendment search and seizure precedents are unclear. The problem is that members of this court believe those precedents lead to an unjust result and therefore want to chart a different path under the Iowa Constitution.
The dissent then moves to its real point, which is that we should adopt a rule under the Iowa Constitution requiring police to advise occupants of their right to refuse a search. The dissent claims this would provide a “much clearer rule.” I have my doubts. The dissent’s proposed rule works only in one direction: If the advice was not given, then the search is invalid. If it was given, the search could still be invalid if the consent is shown to be involuntary for some other reason. See Reinier, 628 N.W.2d at 469 (consent found to be involuntary based on police conduct and statements even though defendant read and signed written consent form). I am not sure the dissent’s one-way rule provides much clarity. To the contrary, the dissent’s seductive allure of promised new clarity in determining the validity of residential consent searches must be weighed against the significant uncertainty inevitably resulting from the break with Iowa and federal search and seizure precedent and the lack of clarity over how far the new advance warning requirement would be extended in future cases.
Yet another problem with the dissent’s approach is its disconnect from the present case. In the dissent’s view, a consent to search is automatically “involuntary” unless the person was told he or she had a right to refuse the search. But in this case, Audsley unquestionably knew she had that right. She indicated to the police she would not consent to a search of her premises; those requests were consistently honored. She did at one point retrieve the fruit can, hand it to the police, and agree that they could open it; but there is no doubt on this record she knew she had the right not to do so. She then refused to consent to a broader search of the premises. If the search here is to be deemed *583 “involuntary,” the reason cannot be Auds-ley’s ignorance of her legal rights. Thus, the dissent would construct a rule to address an issue that is not even presented by this case.[14]
In any event, I would be very hesitant to throw aside decades of precedent and create another discrepancy between Fourth Amendment law and how the identically worded article I, section 8 of the Iowa Constitution is interpreted. See Reinier, 628 N.W.2d at 464 (stating that the “same fundamental right of privacy is found” in the Fourth Amendment and article I, section 8 of the Iowa Constitution). The dissent says that consent forms are practical to use and would not significantly affect law enforcement. It would be nice if law enforcement could weigh in on this subject.[15] They could if the consent requirement were adopted legislatively, rather than as a new-found interpretation of the Iowa Constitution. Because we are talking about changing the law to make it more “practical,” this strikes me as an argument that should be directed in the first instance to the legislature. The dissent cites Welch v. Iowa Department of Transportation, but it is important to recognize that Welch involved adherence to a long-standing bright-line rule of statutory interpretation, as opposed to overturning long-standing constitutional precedent. 801 N.W.2d 590, 592 (Iowa 2011). And merely because prior warnings on written consent forms offer benefits and are currently in use by some law enforcement agencies does not mean we should reinterpret our state constitution to require them hereafter.
The dissent presents .no persuasive reason to overturn our own precedent under both the Fourth Amendment and article I, section 8 of the Iowa Constitution holding prior warnings are not required for consent searches. See State v. Reinders, 690 N.W.2d 78, 82 (Iowa 2004) (“An individual’s response [to police requests to search] is considered consensual, even though the person has not been advised that he is free to refuse to respond.” (citing United States v. Drayton, 536 U.S. 194, 203, 122 S.Ct. 2105, 2112, 153 L.Ed.2d 242, 253 (2002))). The only caselaw cited by the dissent in support of its proposed sea change in search and seizure law are the decisions of just four other state supreme courts. Those decisions are outliers.
The overwhelming majority of state appellate courts analyzing consent search issues on independent state constitutional grounds follows the federal approach and rejects a requirement that police advise suspects they can decline requests for permission to search. See, e.g., State v. Flores, 144 N.M. 217, 185 P.3d 1067, 1071 (N.M.Ct.App.2008) (“Every other state court that has been asked to adopt the Ferrier rule as a matter of state constitutional law has rejected it.”) (collecting knock-and-talk cases); Commonwealth v. Cleckley, 558 Pa. 517, 738 A.2d 427, 432 (1999) (“Those states that have addressed this issue, however, have, for the most part, rejected the notion that knowledge of one’s right to refuse consent to a warrant- *584 less search is required under the applicable state constitution, opting instead to follow the federal voluntariness standard which focuses on the totality of the circumstances as opposed to any one factor.”) (collecting other cases).
The dissent fails to note that the leading case of its minority of four, State v. Ferrier, was expressly based on a unique state constitutional provision stating, “No person shall be disturbed in his private affairs, or his home invaded, without authority of law.” 136 Wash.2d 108, 960 P.2d 927, 930 (1998) (quoting Wash. Const, art. I, § 7). • As the Ferrier court confirmed, “This provision differs from the Fourth Amendment in that, ‘[u]nlike the Fourth Amendment, Const, art. I, § 7 “clearly recognizes an individual’s right to privacy with no express limitations.” ’ ” Id. (quoting State v. Young, 123 Wash.2d 173, 867 P.2d 593, 596 (1994)). By contrast, the Iowa search and seizure provision and the Fourth Amendment are worded identically-
Nevertheless, a sharply divided Arkansas Supreme Court relied on Ferrier in adopting a warning requirement under its state constitution in State v. Brown, 356 Ark. 460, 156 S.W.3d 722, 731 (2004). The dissenting opinion begins, “Today, a 4-3 divided court issues an opinion that makes a radical change in Arkansas search and seizure law. The decision is clearly contrary to prior law and the change is totally unwarranted and unnecessary.” Id. at 732 (Glaze, J., dissenting). Justice Glaze’s observation would be equally true for Iowa if today’s dissent had one more vote in this case.
My colleagues’ dissent cites “values underlying article I, section 8,” but those values are the same values that underlie the Fourth Amendment and all other state constitutional search and seizure provisions. None of those values are new; none of the dissent’s arguments are new. Do today’s dissenters understand those values better than the Justices of the United States Supreme Court, the justices of the great majority of state supreme courts, and our own predecessors on this court who have declined to hold that a consent to search is automatically invalid unless the individual was expressly told he or she had a right to refuse consent? Where others have looked at the same “values” for so long and generally come to a different conclusion, I would be hesitant to substitute my assessment of “values” so quickly.
Notwithstanding the. dissent’s references to “special protection of the home,” the dissent also implies that its requirement of a prior warning of a right to refuse should apply to vehicle searches. The dissent criticizes the reasoning in the Pals majority opinion that one of the dissenters wrote just three months ago. And logically speaking, there is no reason why the dissent’s requirement of a prior warning should not apply to searches of the person. Or, for that matter, to noncustodial interrogations that yield confessions which in the dissent’s new world would be inadmissible without prior- warnings. I would not go there.
MANSFIELD, J., joins this special concurrence.

. Reinier invalidated the search under both the Fourth Amendment and the Iowa Constitution, but its analysis was based on Fourth Amendment precedent and there was no separate consideration of the Iowa Constitution. State v. Reinier, 628 N.W.2d 460, 464, 469 (Iowa 2001).

. The dissent accuses me of trying to send a "message” that repeated police pressure on a person who initially refuses a search but ultimately succumbs to the pressure renders the search valid. Not at all. All I am saying is
(a) the pressure in this case was not such as to render Audsley's consent involuntary, and
(b) it makes no sense to adopt a new rule requiring police to tell persons they have a right to refuse a search in a case in which the individual’s knowledge of that , right was not at issue.

. Here, not even the parties have weighed in on the subject because no one argued here— or below. — for the mandatory warning approach proposed by the dissent.