## IN THE COURT OF APPEALS OF IOWA

No. 16-0245
Filed January 11, 2017

**COREY RUDEN,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.
_____

Appeal from the Iowa District Court for Plymouth County, Edward A. Jacobson, Judge.

Appeal from the denial of postconviction relief. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Zachary S. Hindman of Mayne, Arneson, Hindman, Hisey & Daane, Sioux City, for appellant.

Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee State.

Considered by Danilson, C.J., and Doyle and McDonald, JJ.

**MCDONALD, Judge.**

Corey Ruden was convicted of possession of marijuana, third offense, and sentenced to probation. This court affirmed his conviction on direct appeal. *See State v. Ruden*, No. 11-0422, 2013 WL 1453068, at *3 (Iowa Ct. App. Apr. 10, 2013). Ruden subsequently filed an application for postconviction relief pursuant to Iowa Code chapter 822 (2013). The district court denied the application for postconviction relief, and Ruden timely filed this appeal.

This case arises out of a search of Ruden's residence in which marijuana was discovered. In April 2010, Deputy U.S. Marshal Charles McCormick and Plymouth County Sheriff's Deputy Jeff TeBrink conducted a sex-offender-registry check at Ruden's residence. McCormick knocked on Ruden's door. Ruden opened the door, and McCormick informed Ruden of the nature of the visit. McCormick detected the smell of burnt marijuana, which he testified was an "immediately recognizable scent" based on his training and experience. When McCormick asked whether Ruden had been smoking marijuana, Ruden denied it. Ruden explained he had recently cleaned his tortoise tank and the smell was mold and rotting food material. The officers testified they asked Ruden if they could enter the home. Without waiting for an affirmative yes or no, they walked into the home when Ruden stepped aside. Ruden testified he allowed the officers into the home to show them the tortoise tank. Ruden had two guests in his home at the time of entry. Once the officers were inside the home, TeBrink went to the living room and asked the guests if they had been smoking marijuana. They denied they had. While in the living room, TeBrink noticed an ashtray. TeBrink stated the ashtray contained marijuana residue and seeds or

small amounts of a green leafy substance. McCormick testified it contained marijuana ashes and the end of a marijuana cigarette. Ruden claimed the ashtray did not contain marijuana and was used by guests to put out cigarettes. Regardless, TeBrink began questioning Ruden about whether marijuana was in the home. TeBrink asked to search the home. TeBrink told Ruden they could do this "the hard way" and get a warrant or they could do this "the easy way" and Ruden could consent. Ruden gave oral consent and led the officers to a cache of marijuana. Ruden subsequently signed a consent-to-search form.

In this postconviction action Ruden had the contents of the ashtray tested. Two tests were performed on the ashtray. One was positive for the presence of THC, and the other was negative. The officer conducting the tests explained the results of the test were thus inconclusive. He did testify he could identify stems and unknown green material in the ashtray. He testified cannabinoids degrade over time, which could account for the fact the second test was not positive for THC. Ruden claimed his trial counsel was ineffective "(1) in failing to have tested the contents of the ashtray prior to the suppression hearing; (2) in failing to present the results of such testing at the suppression hearing; (3) in failing to present the actual ashtray and its contents, or at least the photographs of the ashtray taken by law enforcement at the time of its seizure, at the suppression hearing; and (4) in failing to present the testimony of . . . the other individuals who were present at Ruden's residence at the time of Ruden's arrest." The district court denied Ruden's application for postconviction relief.

We review claims of ineffective assistance of counsel de novo. *See State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). To establish a claim of ineffective

assistance of counsel, an applicant is required to prove: "(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). There is a strong presumption of counsel's competence. *See Strickland*, 466 U.S. at 689. "In evaluating the objective reasonableness of trial counsel's conduct, we examine 'whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.'" *State v. Madsen*, 813 N.W.2d 714, 724 (Iowa 2012) (citation omitted). "Miscalculated trial strategies and mere mistakes in judgment normally do not rise to the level of ineffective assistance of counsel." *Ledezma v. State*, 626 N.W.2d 134, 143 (Iowa 2001). As to the second element, "[t]he ultimate inquiry on prejudice is whether trial counsel's allegedly deficient performance caused a complete 'breakdown in the adversary process' such that the conviction is unreliable." *Zaabel v. State*, No. 15-0220, 2016 WL 4035236, at *2 (Iowa Ct. App. July 27, 2016) (quoting *Strickland*, 466 U.S. at 687). Thus the applicant "must ultimately show that his attorney's performance fell outside a normal range of competency and that the deficient performance so prejudiced him as to give rise to the reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994). Failing to prove either element is fatal to the applicant's claim. *See Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015) ("If we conclude a claimant has failed to establish either of these elements, we need not address the remaining element."); *State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003) ("A defendant's inability to prove either element is fatal.").

Ruden failed to establish he suffered constitutional prejudice. Ruden contends if the contents of the ashtray had been tested, the negative test results combined with his guests' testimony—that they had not smoked marijuana—would have undermined the credibility of the investigating officers and led to the suppression of the marijuana evidence. This argument is speculative at best. More important, the argument is predicated on the false assumption the test result at the time of the suppression hearing would have been the same as the test result at the time of the postconviction hearing. The testing officer explained cannabinoids degrade over time thus potentially explaining the inconclusive result. Most important, Ruden's argument is immaterial. It does not matter whether the ashtray in fact contained marijuana detritus. And it does not matter whether Ruden's guests denied they had been smoking marijuana. The dispositive fact is Ruden invited the officers into his home and gave oral and written consent to search, even directing officers to his cache of marijuana. Consent to search is a recognized exception to the warrant requirement. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) ("It is . . . well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent."); *State v. Baldon*, 829 N.W.2d 785, 791 (Iowa 2013) ("One recognized exception to the warrant requirement of our constitution is consent."); *State v. Reiner*, 628 N.W.2d 460, 464–65 (Iowa 2001) ("One well-established exception to the warrant requirement is a search conducted by consent."). Thus, the result of the suppression hearing would not have been different. Ruden's claim thus fails. *See Dempsey*, 860 N.W.2d at 868.

Ruden contends the district court erred in assessing the costs of his court-appointed, postconviction-counsel against him without first making a determination whether Ruden could reasonably afford to pay the costs. The State contends Ruden failed to preserve error on the issue. Under the circumstances, we disagree and will address the issue on the merits.

Postconviction-relief proceedings are civil actions governed by Iowa Code chapter 822. *See Noear v. State*, No. 13-1379, 2014 WL 3748276, at *1 (Iowa Ct. App. July 30, 2014). Iowa Code section 815.9(6), which applies to chapter 822, states:

> If the person receiving legal assistance is acquitted in a criminal case or is a party in a case other than a criminal case, the court shall order the payment of all or a portion of the total costs and fees incurred for legal assistance, to the extent the person is reasonably able to pay, *after an inquiry* which includes notice and reasonable opportunity to be heard.

(emphasis added.); *see also* Iowa Code § 822.5 ("If the applicant is unable to pay court costs and stenographic and printing expenses, these costs and expenses shall be made available to the applicant in the trial court, and on review."). The language of the statute is clear: the district court is to make an inquiry, "which includes notice and reasonable opportunity to be heard" prior to assessing costs against an applicant in a postconviction proceeding. Iowa Code § 815.9(6). This did not happen in this case. The State concedes the district court erred in failing to make a determination as to Ruden's ability to pay the costs prior to assessing them.

For the foregoing reasons, we affirm the district court's order denying Ruden's application for postconviction relief. We vacate the district court's order

assessing the costs of court-appointed counsel against Ruden.  We remand this matter for a hearing regarding the assessment of costs.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**