# IN THE COURT OF APPEALS OF IOWA

No. 18-2098
Filed December 18, 2019

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JEREMY RUTTER,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Linda M. Fangman (suppression) and David P. Odekirk (trial and sentencing), Judges.

Jeremy Rutter appeals his conviction and sentence for two counts of possession with intent to deliver and a drug tax stamp violation. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, (until withdrawal) and Robert P. Ranschau, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Thomas E. Bakke, Assistant Attorney General, for appellee.

Considered by Potterfield, P.J., and Tabor and Greer, JJ.

**GREER, Judge.**

Jeremy Rutter appeals his conviction and sentence for two counts of possession with intent to deliver and a drug tax stamp violation as a habitual offender. Rutter argues the district court should have granted his motion to suppress evidence found during a warrantless search of his bedroom. The actions of Rutter's girlfriend confirm the search was based on voluntary consent. We affirm.

### I. Background Facts and Proceedings.

Early in the morning on November 20, 2017, Waterloo police arrested Rutter for eluding. An officer acquainted with Rutter knew he lived in Cedar Falls and was the sole parent of two children after the children's mother passed away.[1] He also heard rumors of Rutter's drug use. When the officer learned of Rutter's arrest, he contacted the Cedar Falls police and requested a welfare check on Rutter's children. The officer also warned Cedar Falls police there might be drug activity at the home.

Shortly after four in the morning, Captain Jeff Sitzmann and two additional Cedar Falls police officers went to Rutter's home and knocked on the door.[2] Mandy Way, Rutter's girlfriend, answered. Captain Sitzmann asked if he could check on the children because of Rutter's arrest. Way agreed and let the officers into the home. The officers observed the children sleeping in the living room.

---

[1] This officer's father dates Rutter's deceased wife's mother.
[2] Police body camera footage captured the entirety of the interaction between officers and Rutter's girlfriend.

Assured of the children's safety, Captain Sitzmann then asked if he could look around the house. Way agreed. Captain Sitzmann asked where the children's room was. Way showed him and told him "you can look." He did.

As they moved from the children's bedroom, the dialogue continued with Captain Sitzmann discussing potential drug use with Way and the circumstances of Rutter's arrest. Way assured Captain Sitzmann that Rutter was currently sober. Captain Sitzmann asked if there was anything at the house he should be concerned about, and Way said no. He then asked, "Can I walk around with you just real quick?" Way responded, "Sure." Next, Captain Sitzmann walked through the dining room and kitchen to the basement steps with Way following. As Captain Sitzmann descended the basement steps he asked if it was all right to go into the basement. Way said someone was sleeping in the basement but followed him downstairs.

Captain Sitzmann knocked on a closed door. The occupant opened the door. Captain Sitzmann spoke to the individuals sleeping in the basement bedroom. He asked about the children's welfare and about any drug use in the home. Captain Sitzmann looked into the room although he respected the occupants' wishes not to search the entire room.

Continuing through the home, Captain Sitzmann asked Way if he could look through the garage. Way agreed and talked with him as he looked around. After looking through the garage, he asked about other closed doors in the basement. Way told him he could open the doors and look. Captain Sitzmann returned to the basement and looked behind the remaining closed doors while Way stayed

upstairs. When he finished he met Way upstairs and continued a discussion about whether she believed Rutter was using drugs.

As the two talked, he asked Way where the master bedroom was located and if there was anything in there he should be concerned about. She directed him to her bedroom. He asked, "Can you go with me, Mandy? I don't want to get into any of your private clothing or anything like that, you know?" Way responded by walking past him, opening the bedroom door, and entering ahead of him. She watched and talked with him as he looked around the room.

While Captain Sitzmann was looking around, he saw a torch, which he recognized as something used to manufacture drugs. He also saw a scale with white residue and told Way he believed it was methamphetamine. He kept looking, and she denied any knowledge about the drug paraphernalia as he looked. He then saw a baggie inside a partially opened drawer of a jewelry box. He opened the jewelry box drawer further to get a better look at the baggie and saw that it contained white powder consistent with methamphetamine. Captain Sitzmann asked Way about the baggie, and she said it was Rutter's.

With knowledge of the bedroom contents, Captain Sitzmann asked for consent to search the bedroom. Way asked if she could say no, Captain Sitzmann told her that she could, and then Way refused. The officers secured the residence and obtained a search warrant. Before the warrant was approved, Sitzmann entered the room again with another officer to show the officer what he had observed. Later, with the warrant in hand, the officers searched the entire bedroom and found suspected methamphetamine, packaging materials, a digital scale, cash in a safe, and other drug paraphernalia.

Rutter was charged with one count of possession with intent to deliver methamphetamine, second offense, one count of possession with intent to deliver simulated methamphetamine, and a drug tax stamp violation with a habitual offender enhancement. He moved to suppress, alleging in part that Captain Sitzmann's warrantless search of the home was unconstitutional.[3] The court denied the motion.

Rutter waived his right to a jury trial, and the case proceeded to a trial on the minutes. The district court found Rutter guilty as charged. The court sentenced him to indeterminate terms of incarceration not to exceed twenty-five years on each possession charge and fifteen years on the drug tax stamp violation, run concurrently, plus fines and surcharges. Rutter appeals.

## II. Standard of Review.

We review constitutional claims de novo. *State v. Ochoa*, 792 N.W.2d 260, 264 (Iowa 2010). "In conducting the de novo review, the court 'make[s] an independent evaluation [based on] the totality of the circumstances as shown by the entire record.'" *Id.* (quoting *State v. Breuer*, 577 N.W.2d 41, 44 (Iowa 1998)).

## III. Analysis.

The Fourth Amendment and article I, section 8 protect people against unreasonable searches and seizures.[4] "When both federal and state constitutional

---

[3] He also argued that the search warrant was unconstitutional but he has abandoned this claim on appeal.

[4] *See* U.S. Const amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ."); Iowa Const. art. I, § 8 ("The right of the people to be secure in their persons, houses, papers and effects, against unreasonable seizures and searches shall not be violated; and no warrant shall issue but on probable cause . . . .").

claims are raised, we may, in our discretion, choose to consider either claim first in order to dispose of the case, or we may consider both claims simultaneously." *Id.* at 267.

A warrantless search is per se unreasonable unless it falls under a specific exception to the warrant requirement. *State v. Jackson*, 878 N.W.2d 422, 428 (Iowa 2016). One exception to the warrant requirement is a search based on voluntary consent. *Id.* at 429. The State must prove by a preponderance of the evidence that consent was given and that the consent was voluntary. *State v. Reinier*, 628 N.W.2d 460, 465 (Iowa 2001). "The first question turns on whether the [individual] manifested his or her consent, while the second question examines the validity of the consent given." *Id.*

To begin, Rutter concedes Way had authority to consent to the search of the bedroom. That said, Rutter argues that (1) Way did not consent or (2) her consent was not voluntary.

Rutter contends Way did not explicitly consent to the search of the bedroom. Yet consent need not be verbal to be valid so long as the circumstances establish valid consent. *Id.* at 467. Consent "may be found not only by words, but by gestures and non-verbal conduct." *Id.* The scope of consent is limited "by what a 'typical reasonable person [would] have understood by the exchange between the officer and the suspect.'" *State v. McConnelee*, 690 N.W.2d 27, 30 (Iowa 2004) (quoting *Florida v. Jimeno*, 500 U.S. 248, 251 (1991)).

In the analysis, voluntariness is a fact inquiry based on the totality of the relevant circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). The circumstances establish that Way consented to the search of the master

bedroom. After checking on the children, Captain Sitzmann asked if he could take a look around the house. Way consented, and Captain Sitzmann began walking through the house, room by room, finally reaching the master bedroom. Although he asked for express permission to look in the children's room, the basement, and the garage, he did not say he intended to limit his search to particular rooms of the house, and Way did not restrict his search. Throughout the search, Way followed him and answered his questions. Before entering the master bedroom, Captain Sitzmann explained his intent to look through the room and asked Way to accompany him so that he did not get into any of her personal items. She opened the door for him, allowed him into the bedroom, watched him look around, and talked to him as he did so. The act of opening a door and stepping back can constitute consent. *Reinier*, 628 N.W.2d at 467 (citing several federal cases). For these reasons, we conclude Way consented to the search of the master bedroom. We must next decide whether her consent was voluntary.

Lacking any testimony from Way during the suppression hearing, we consider the totality of the circumstances as reflected by the body cam's recording system to determine whether the consent was voluntary under the Iowa Constitution. *See State v. Pals*, 805 N.W.2d 767, 782 (Iowa 2011). "Consent is considered to be voluntary when it is given without duress or coercion, either express or implied." *Reinier*, 628 N.W.2d at 465. The State carries the burden to prove consent was voluntary by a preponderance of the evidence. *State v. Garcia,* 461 N.W.2d 460, 462 (Iowa 1990). We consider several factors including "the circumstances surrounding the consent given and the characteristics of the" individual giving consent. *Reinier*, 628 N.W.2d at 465–66 (citations omitted). The

individual's age, mental ability, intoxication, and knowledge of legal protections for criminal defendants are all relevant; we also consider the location of the search and whether the individual objected to the search. *State v. Lowe*, 812 N.W.2d 554, 572–73 (Iowa 2012) (quoting *United States v. Golinveaux*, 611 F.3d 956, 959 (8th Cir. 2010)). We ask whether the individual knew they could refuse consent, whether police asserted authority to search, and whether the police used force, coercion, or deception to gain consent, including threats to get and execute a warrant when police lack a sufficient basis for a warrant. *Reiner*, 628 N.W.2d at 465–66.[5] No one factor is controlling.

Our de novo review is supported by the bodycam conversations and Way's demeanor and actions. Based on that review, we conclude her consent to the search was voluntary. Way is an adult, was in her own home, acknowledged she was sober, and appeared calm throughout the search. While she accompanied the officers for part of the search, at times she left the officers alone while she remained upstairs. Captain Sitzmann's tone throughout the search was calm and conversational, and he did not threaten her, was clear about his concerns that Rutter was using drugs, and did not assert authority to search. Even when asked about the bedroom, Way voluntarily moved ahead of the officer, opened the door, and led him into the room. Her actions show consent. Until the discovery of drug materials, Way did not object to the search but cooperated with the officers and answered their questions throughout the search.

---

[5] The Iowa Supreme Court has not answered whether the police must advise an individual of their right to decline to consent to a search to establish consent under the Iowa Constitution. *See, e.g.*, *Pals*, 805 N.W.2d at 782.

Finally, Rutter asserts that under the Iowa Constitution one factor to consider is whether law enforcement advised Way of her right to refuse the warrantless search. He also contends that the search unconstitutionally expanded beyond the welfare check purpose. *Pals*, 805 N.W.2d at 775–78. It remains uncontested that law enforcement knew drug activity might be present in a home where children resided without a present parent. The home check related to legitimate safety concerns plus the reasonable suspicion of alleged criminal activity. While Way was not specifically told she had a right to refuse any search request, "it is not a prerequisite for obtaining voluntary consent," and without other factors suggesting threats, pressure, or coercion, the State has met its burden. *Id.* at 777. Based on the totality of the circumstances, we conclude Way's consent was voluntary and was not unconstitutional under the Fourth Amendment or article I, section 8. The district court properly denied Rutter's motion to suppress.[6]

## IV. Disposition.

For the above stated reasons, we affirm Rutter's conviction and sentence.

**AFFIRMED.**

---

[6] In his appellate brief, Rutter makes a passing reference to Captain Sitzmann's entry into the master bedroom after Way revoked her consent to search but before obtaining a search warrant. Rutter does not claim that this search expanded upon the consent search or that it led to the officers finding any additional incriminating evidence.