598 So.2d 624 (1992)
STATE of Louisiana
v.
Albert G. GREEN, Jr.
No. Cr91-775.
Court of Appeal of Louisiana, Third Circuit.
April 16, 1992.
*625 George Higgins, Pineville, for defendant.
Thomas Yeager, Asst. Dist. Atty., Alexandria, for plaintiff.
Before GUIDRY, J., and MARCANTEL and HOOD, JJ. PRO TEM.
GUIDRY, Judge.
On November 14, 1990, the defendant, Albert G. Green, Jr., was charged by bill of information with possession with intent to distribute a Schedule I CDS, a violation of La.R.S. 40:966 A(1). Originally, the defendant pled not guilty to the charge. However, after the trial judge ruled unfavorably on a motion to suppress, the defendant entered a guilty plea reserving his right to appeal the trial court's ruling under authority of State v. Crosby, 338 So.2d 584 (La. 1976). On March 28, 1991, the trial judge sentenced defendant to serve five (5) years at hard labor with the Department of Corrections. Defendant appeals assigning three errors. As the defendant abandoned assignment of error No. 2, it will not be addressed. See Uniform RulesCourts of Appeal, Rule 2-12.4.

FACTS
On June 6, 1990, the Alexandria City Police Department received several anonymous tips pertaining to drug activity on their "HOT-LINE". One of these tips, received by Sergeant Dupuy, alleged drug activity at a residence located at 1503 August Street. Based solely on this tip, Detective Bettevy, Detective Sibley, Detective Terry and Sergeant Coutee went to 1503 August to follow up on the tip. At trial, Detective Bettevy testified that in such cases officers would approach the occupant of the pin-pointed residence, explain why they were there and attempt to gain the occupant's consent to search the dwelling.
On the occasion in question, the officers approached the residence in unmarked police units on a public street. They exited their vehicles in plain clothes and immediately noticed three males standing around drinking on the back porch. They walked through the yard and approached the men and identified themselves. Detective Bettevy questioned the men as to who lived at the residence. One of the men, Mr. Bullitts, stated that he lived there. Detective Bettevy advised him of the complaint they *626 had received and Bullitts responded that he knew of no drug activity at that residence.
Detective Bettevy then proceeded to ask Bullitts if he had any problem with the officers checking through his house to see if there were any drugs. Bullitts replied that he had no problem with them searching the house. When Detective Bettevy presented him with a consent to search form for his signature, confirming that he had given his verbal consent, Bullitts stated that he would first have to go talk to his uncle who was inside.
Detectives Bettevy and Sibley testified that Bullitts turned and walked into the house, apparently to talk to his uncle. At that point, Detective Sibley stated that he went to one side of the house and Detective Terry walked to the opposite side to ensure the safety of the officers at the scene by making sure no one came around behind the house with any type of weapon.
As Detective Sibley approached the front corner of the house, he saw the defendant, Albert Green, Jr., exiting through the front door with a brown paper bag in his hand. Green quietly eased the door shut behind him and began to sneak around the side of the house away from the officer. Detective Sibley drew his gun and called, "Freeze, Police", whereupon the defendant looked back and took off running around the corner between the house and the adjacent railroad tracks. As Green got to the side of the house, he threw the brown bag over a ditch into some bushes near the bank of the railroad tracks. Detective Sibley yelled, "He's coming your way" to the officers in the rear. Detective Sibley did not retrieve the bag at that point but, rather, he went around the house to assist the other officers with Bullitts and the defendant. He did, however, send Detective Terry to make sure the bag was secure until photographs could be taken. Detective Sibley, who examined the bag after the photographs were taken, testified that the bag contained numerous small plastic bags of a green leafy substance which appeared to be marijuana.
Green stopped as he ran around the house and saw Detective Terry. Meanwhile, the other detectives had placed the other two males face down on the porch to control the situation and for their own safety. Detective Sibley stated that Bullitts was still inside the house when he returned from chasing the defendant.
After the officers had opened the bag revealing the marijuana, the defendant was read his rights and handcuffed.

ASSIGNMENT OF ERROR NO. 1
By this assignment of error, the defendant contends that the trial court erred in denying defendant's motion to suppress the contents of the paper sack. The defendant argues that the police were not lawfully on the property of his co-defendant, Sam Bullitt. The defendant further argues that, although the jurisprudence supports the "knock and talk" approach of the police, it does not extend to "knock, talk and surround." Thus, if the police would not have illegally surrounded the residence they would not have seized the brown paper bag. The defendant argues further that if the State relies on the theory of abandonment to substantiate the search and seizure, the evidence is still inadmissible as the defendant abandoned the property in response to an illegal stop.
First, the record establishes that the police did not surround the house. They simply approached the back porch with the occupants present. They were never asked to leave. It was only after Bullitts walked into the house that two of the officers went to the two near corners of the house for the safety of all concerned. Therefore, this case is no different from any other "knock and talk" case insofar as the officers' rights to go onto private property. The defendant admits in his brief that in each case he cited the court stated, "it is almost implicit understanding and custom that in the absence of signs or warnings, residents may be approached and occupants summoned to the door". Second, as pointed out by the trial judge in his reasons for refusing to suppress the marijuana seized from the paper bag, any objection the defendant may have had as to the approach by the officers would not be relevant as he *627 stated he was not aware of their presence until after he discarded the brown paper bag.
Next, the defendant contends that if the theory of abandonment is relied upon, the evidence is inadmissible as the defendant abandoned the brown paper bag in response to an illegal stop.
The right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by La.C.Cr.P. art. 215.1 as well as both state and federal jurisprudence. An officer may stop a person with less than probable cause for arrest if he has specific and articulable facts to suspect possible criminal activity. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The validity of the investigatory stop depends on whether the officer has articulable knowledge of particular facts, sufficient to warrant infringement on the person's constitutional right to be left alone. State v. Shy, 373 So.2d 145 (La.1979).
We find this case strikingly similar to State v. Pittman, 585 So.2d 591 (La.App. 5th Cir.1991), writ denied, 586 So.2d 545 (La.1991), wherein a subject in an area of known high drug traffic fled upon observing police nearing his location in their vehicle. The officers exited their vehicles and followed. During the course of the pursuit, the defendant discarded a match box which was retrieved and found to contain suspected rock cocaine. In upholding the trial court's denial of defendant's motion to suppress, our brethren of the Fifth Circuit stated:
"The Louisiana Supreme Court has held that "reasonable cause for an investigatory detention is something less than probable cause and must be determined under the facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference." State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). The court further held that the right to make the investigatory stop must be based upon "reasonable cause to believe ... [the individual detained] has been, is, or is about to be engaged in criminal conduct." Id.

Flight, nervousness, or a startled look at the sight of a police officer is not by itself sufficient to justify an investigatory stop. State v. Belton, supra. However, such conduct may be highly suspicious and maybe one of the factors leading to a finding of reasonable cause. Id."

Considering all the factors in this case, we find that Officer Sibley did have reasonable suspicion sufficient to stop the defendant. Although he testified that he could not see what was in the bag, the reasonable suspicion developed as a result of the totality of the circumstances. More specifically, the police were following up on a "HOT-LINE" tip alleging drug activity at a residence in an area known for its high drug traffic. Following contact and a request for consent to search, Officer Sibley observed the defendant sneaking out the front of the house carrying a large brown paper bag and, upon his order to freeze, the defendant fled discarding the bag as he did so. See also State v. Simon, 524 So.2d 250 (La.App. 5th Cir.1988); State v. Vinet, 576 So.2d 1200 (La.App. 5th Cir.1991); and California v. Hodari, D., ___ U.S. ___, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991).
Inasmuch as we find the marijuana was seized as a result of a legal investigatory stop, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3
By this assignment of error, the defendant contends that the trial court erred in sentencing the defendant to an excessive sentence.
In this case, the State alleges that at the pretrial conference, Judge Lauve stated that if the defendant pled guilty at the motion to suppress, assuming the ruling on the motion was adverse, he would receive five years with the Department of Corrections. However, at the sentencing, there is *628 no clear indication that the defendant agreed to this sentence.
It is well settled that where a specific sentence has been agreed upon as a consequence of a plea bargain, the sentence may not then be appealed as excessive. Also, where a specific sentence is agreed to, the trial judge is not required to follow the guidelines set forth in La.C.Cr.P. art. 894.1. State v. Bell, 412 So.2d 1335 (La.1982); State v. Jefferson, 524 So.2d 870 (La.App. 3rd Cir.1988).
In this case, the record does not confirm that there was a plea bargain agreement. Defendant's guilty plea was to the offense charged in the bill of information. Under these circumstances, we find it important that any agreement as to the sentence defendant was to receive be express, and that evidence of that agreement be made a part of the record. Defendant allegedly agreed to the sentence imposed at a pretrial conference. There is no evidence in the record to substantiate that allegation. The pretrial conference was not recorded, neither is there any minute entry verifying the existence of the conference and the agreement, nor is there any other evidence of an agreement for us to consider.
During sentencing, the "agreement" as to sentence was alluded to by the trial judge and was specifically referred to by the district attorney. However, the defendant neither acknowledged this "agreement" nor in any way affirmatively indicated that he agreed to the sentence imposed.
In State v. Robicheaux, 412 So.2d 1313 (La.1982), the Louisiana Supreme Court, commenting on the function of the trial judge in sentencing, stated:
"Trial judges are granted great discretion in imposing sentences, but even sentences within statutory limits may be excessive under certain circumstances. State v. Jones, 398 So.2d 1049 (La.1981); State v. Spencer, 374 So.2d 1195 (La. 1979). Sentences must be individualized to be compatible with the offenders as well as the offenses. In deciding whether to confine a defendant or grant probation, the judge must consider certain factors enumerated in La.C.Cr.P. art. 894.1(A)(B). State v. Jones, supra. This article entitles the defendant to such an articulation and represents a legislative attempt to guide the trial judge in thoughtfully imposing an appropriate sentence under the facts and circumstances of the particular case. Also this serves as an important aid to this court when called upon to exercise its constitutional function to review a sentence complained of as excessive. State v. Ramos, 390 So.2d 1262 (La.1980). When the trial judge fails to state any reasons for the sentence a remand may be necessary. State v. Ortego, 382 So.2d 921 (La. 1980)."
Although there is neither a presentence investigation report nor a "rap" sheet in the record, remarks by the district attorney appear to indicate that the 44 year old defendant is a first time offender. If such is the case, the legislature has not seen fit to preclude the possibility of suspension of sentence and probation in lieu of a prison sentence for the crime charged herein.
"In deciding whether to confine a defendant or to grant him probation, the judge must consider the factors listed in Art. 894.1, based upon factual determinations. The judge should review the defendant's personal history, prior criminal record, the seriousness of the offense, the likelihood that he will commit another crime, and his potential for rehabilitation through correctional services other than confinement. State v. Jackson, 360 So.2d 842 (La.1978). It is not improper for the judge to take into account larger sociological concerns in imposing sentence, as long as the sentence is particularized to the defendant. State v. Ray, 423 So.2d 1116 (La.1982); State v. Bourgeois, 406 So.2d 550 (La.1981)."
State v. Vampran, 459 So.2d 1333 (La.App. 1st Cir.1984).
In the case sub judice, the trial judge simply imposed the sentence without discussing any of the factors in La.C.Cr.P. art. 894.1. Inasmuch as the record does not affirmatively show that the sentence imposed was agreed to by defendant as *629 part of a plea agreement and since there was no consideration given to a suspended and/or probated sentence or any compliance with C.Cr.P. art. 894.1, the sentence cannot stand.
Accordingly, for the reasons stated, the defendant's conviction is affirmed, but his sentence is vacated and the case is remanded to the trial court for resentencing in accordance with the views expressed herein.
CONVICTION AFFIRMED; SENTENCE VACATED; AND, CASE REMANDED FOR RESENTENCING.