801 So.2d 380 (1999)
STATE of Louisiana, Appellee,
v.
David Dewayne DAVENPORT, Appellant.
No. 32,329-KA.
Court of Appeal of Louisiana, Second Circuit.
September 22, 1999.
*381 Louisiana Appellate Project by Amy C. Ellender, Mer Rouge, Counsel for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Clifton M. Davis, Tommy J. Johnson, Asst. Dist. Atty., Counsel for Appellee.
Before STEWART, CARAWAY and DREW, JJ.
DREW, Judge.
Defendant pled guilty to the responsive charge of attempted possession of a firearm by a convicted felon, a violation of La. R.S. 14:27 and 14:95.1. At the guilty plea, defendant reserved his Crosby right to appeal the denial of his motion to suppress. The trial court sentenced defendant to serve an agreed sentence of five years imprisonment at hard labor without benefit of probation, parole, or suspension of sentence, to run concurrently with defendant's parole matter. The trial court also suspended the mandated minimum fine of $500.
Defendant now appeals his conviction, urging one assignment of error, the denial of his motion to suppress. Finding no merit in defendant's appeal, his conviction is affirmed.

FACTS
On February 7, 1998, the Shreveport Police Department conducted a "knock and talk" at a residence located at 1613 Easy Street in Shreveport. Encountering defendant on the porch of the residence, the officers frisked him for their safety, finding a .22 caliber pistol on his person. Defendant had a prior conviction for robbery in the 39th Judicial District Court, Parish of Red River and was charged with possession of a firearm by a convicted felon.

*382 DISCUSSION

The only issue before this court is whether the trial court erred in failing to grant defendant's motion to suppress the gun seized from his person. Defendant contends that the trial court erred in failing to suppress the hand gun seized from him as a result of a pat-down search. Specifically, defendant argues that the police were not lawfully on the premises once he demanded that the officers produce a search warrant. Defendant next argues that even if the police were legally on the premises, they did not have legal justification to conduct a physical search.
At the hearing on the defendant's motion to suppress, only Sgt. D.E. McDaniels and Officer Robert Elliot of the Shreveport Police Department testified.

TESTIMONY OF SGT. McDANIELS
McDaniels testified he was involved in a "knock and talk" operation at 1613 Easy Street on February 7, 1998, at approximately 5:15 p.m. The department conducted a "knock and talk" at that location because of intelligence information, observations of street level interdiction officers and neighbors' complaints regarding drug trafficking and a high volume of foot traffic. Approximately one week before this "knock and talk" operation, a subject identified as Davenport fled from officers who had come to that location with "concerns," but less than probable cause.
The officers were in full class A uniforms and a marked police car was parked in front of the house. Two other officers approached the side of the house while he and Officer Elliot approached the front of the house. McDaniels observed two individuals, including defendant, outside the house when he arrived. As they approached, McDaniels testified that there was combative verbiage by defendant who was very aggressive and very forceful. Defendant asked the officers if they had a search warrant. McDaniels testified that defendant was sitting in a chair at the time and he believed the defendant rolled forward because his arms moved. In order to protect himself and other individuals, McDaniels touched defendant's waistline and pockets. McDaniels felt a hard object, the structure of which revealed that it was a gun. At that point, McDaniels yelled "gun" and effected an immediate arrest. He then recovered the loaded .22 caliber pistol, later testifying that it was obvious the object was a weapon when he touched it. McDaniels denied pulling his service revolver, but did recall wrestling with defendant and reaching aggressively for the hidden gun.
The defendant had moved his hand and was loud, angry and aggressive, demanding a search warrant. According to McDaniels, the defendant's actions and words were provoking, especially since he was in such close proximity to defendant.
The officers knew a female was in control of the residence. Officer Elliot was at the door of the residence attempting to contact the owner, Evelyn Robinson, while McDaniels interacted with defendant. Robinson never asked the officers to leave the premises, nor did defendant. After defendant was read his Miranda rights, defendant admitted to wrongfully carrying a weapon and stated, "you got me." However, McDaniels did not include this statement in his report.
On cross examination, McDaniels stated that the defendant did not verbally threaten his person, but committed an act of physical aggression when he raised himself forward in close proximity to the officer. He further explained that he did not search the defendant until after he touched the weapon.
On redirect-examination, McDaniels testified that if defendant had stepped inside *383 the house he would not have approached his person. McDaniels explained that he had no option but to approach the defendant because he was both verbally, and then physically, aggressive and threatening.

TESTIMONY OF OFFICER ELLIOT
Officer Robert Elliot was also involved in the "knock and talk," having received information from a confidential informant that an individual at this specific location was dealing narcotics, known to carry a firearm and on probation. Elliot had previously used this same confidential informant, resulting in a felony arrest. The officer had personally observed individuals on the porch of that location and individuals coming and leaving the residence without staying for any substantial length of time.
The officers were attempting to contact Evelyn Davenport Robinson, the legal owner of the house, to gain her consent to search the house for narcotics. Elliot testified that prior to going to the location, other officers were designated to go to the rear of the house in case someone attempted to flee. A total of five officers were involved in the "knock and talk."
The officers exited their vehicles at the location when they received the go ahead that the other officers were in position in the rear of the house. According to Elliot, defendant began screaming at the officers and asking them if they had a search warrant. Elliot bypassed the defendant and proceeded to the front door. Elliot then made contact through the screen door with Evelyn Davenport Robinson. McDaniels made contact with defendant, who was sitting in a chair on the porch of the house. Elliot testified that defendant addressed the officers in a loud, defensive and hostile manner.
Elliot testified that as he made contact with Evelyn Davenport Robinson, McDaniels was conducting a Terry pat down of the exterior of defendant's clothing. Elliot realized the seriousness of the situation when McDaniels yelled "gun." At that point, Elliot turned around and observed that McDaniels had pushed defendant back into the chair. McDaniels had his left hand on the chest of defendant and his right hand on the gun. Elliot then grabbed defendant's left arm, wrapped his arm around defendant's shoulder area, and pulled him back so McDaniels could remove the gun from defendant's waistband area. Elliot then took defendant to the ground, gained control of him, and handcuffed him. Officers Herd and Elliot then stood defendant up, walked him to the car, searched him further, and placed him in the back of the police unit.
Elliot read defendant his Miranda rights. Defendant refused to sign the rights card, making no statement post-Miranda, though he did tell Evelyn Davenport Robinson not to allow the officers inside the house because they had no right to be there. Elliot testified that defendant also lied about his first name and his date of birth several times. Elliot transported defendant to the city jail.
Elliot had previously used the confidential informant who provided him with the information in this matter, resulting in a felony arrest.
Elliot found defendant's demeanor to be offensive and atypical. Elliot admitted having been fired from a men's clothing store previously, but denied ever drawing his weapon on the date in question. Defendant never verbally threatened him.

ANALYSIS
(1) Did Sgt. McDaniels have a legal right to be where he was, doing what he was doing?
*384 (2) Was he confronted with a sudden emergency, requiring quick action for his safety and the safety of his fellow officers?
(3) Were his responses to the imminent danger justified?
The answers to all three questions are, without a doubt, in the affirmative.

(1) The Conduct of Sgt. McDaniels Immediately Prior to the Altercation
The court must first determine if the initial contact with defendant was lawful. Defendant acknowledges in his brief that the jurisprudence allows the "knock and talk" approach of police. State v. Green, 598 So.2d 624 (La.App. 3d Cir. 1992).
However, defendant argues that the officer's authority to be on the property ceased when defendant demanded they produce a search warrant. The fact that defendant (apparently not the lawful possessor of the house) vocally and belligerently asked the officers if they had a search warrant does not equate to asking them to leave. Further, nowhere does this record suggest that ANYONE ever asked or demanded that the officers leave. Public safety requires some flexibility for police officers to investigate and prevent crime. State v. Wesley, 28,012, (La. App.2d Cir.4/3/96), 671 So.2d 1257, writ denied, 96-1127 (La.10/4/96), 679 So.2d 1379. The policemen had a legal right to be on these premises.

(2) The Sudden Emergency
This is not a typical stop and frisk case for at least two reasons. First, it occurred within private residential curtilage, and second, there is not the usual temporal situation of a stop, followed thereafter by a separate frisk. However, many of the same Terry standards are instructive in other situations of interaction between police and private citizenry which do not fit the ordinary mold.
Was the suddenness and seriousness of the citizen's actions enough of a safety concern that a reasonable officer would have responded as Sgt. McDaniels did? The Fourth Amendment to the United States Constitution and Article 1, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. State v. Jackson, 26,138 (La.App.2d Cir.8/17/94), 641 So.2d 1081 (citations omitted). Our state constitution goes even further, guaranteeing the right of privacy. State v. Church, 538 So.2d 993 (La.1989).
However, the right of law enforcement officers to temporarily detain and interrogate persons reasonably suspected of criminal activity is well established. La.C.Cr.P. art. 215.1; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Fauria, 393 So.2d 688 (La.1981); State v. Taylor, 363 So.2d 699 (La.1978). The right to make an investigatory stop must be based on reasonable cause to believe that the suspect has been, is, or is about to be engaged in criminal activity. State v. Washington, 621 So.2d 114 (La.App. 2d Cir.), writ denied, 626 So.2d 1177 (La.1993); State v. Patterson, 588 So.2d 392 (La.App. 4th Cir.1991); State v. Thibodeaux, 531 So.2d 284 (La. App. 3d Cir.1987). Reasonable cause for an investigatory stop is something less than probable cause, but the officer must have "articulable knowledge" of particular facts which, in conjunction with reasonable inferences drawn therefrom, provide reasonable grounds to suspect the detainee of criminal activity. State v. Flowers, 441 So.2d 707 (La.1983), cert. denied, 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984); State v. Washington, supra; State v. Rodriguez, 396 So.2d 1312 (La.1981); State v. Thibodeaux, supra.
*385 Reasonable cause or reasonable suspicion is something less than probable cause to arrest and must be determined under the facts of each case, considering whether the officer has sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from government interference. Whether an officer has a reasonable suspicion to make an investigatory stop should be judged under the totality of the circumstances, in light of the officer's experience, training and common sense. The officer's experience may be considered in determining whether his inferences from the facts at hand were reasonable. State v. Jackson, supra, and authorities cited therein.
This record amply supports Sgt. McDaniels in his split-second reasonable belief that he was in a dangerous and volatile situation. Faced first with vocal belligerence and then aggressive and physical action, the officer was in a sudden emergency.

(3) The Reaction of the Officer
When reviewing a trial court's ruling on a motion to suppress based on findings of fact, great weight is placed upon its determination, because the trial court had the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Jackson, supra; State v. Aucoin, 613 So.2d 206 (La.App. 1st Cir. 1992).
The record establishes that three officers approached the front of the house where defendant was located and two officers approached the back of the house. Any objection that defendant may have had as to the rear approach by the officers would not be relevant because there is nothing in the record to suggest that he was even aware of their presence at the back of the home. Thus, this is not a situation where defendant can claim he was surrounded and intimidated by the police. See State v. Green, supra.
This court must consider whether Sgt. McDaniels' frisk of defendant was justified, and whether the scope of same remained within legal parameters. If a law enforcement officer stops a person pursuant to La.C.Cr.P. art. 215.1, he may conduct a limited pat-down frisk for weapons if he reasonably believes that he is in danger or that the suspect is armed. State v. Jackson, supra, and the authorities cited therein.
In Terry v. Ohio, supra, the Supreme Court stated:
The sole justification of the search in the present situation is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the police officer. A police officer is justified in frisking the subject after a lawful investigatory stop only under circumstances where a reasonably prudent man ... would be warranted in the belief that his safety or that of others was in danger.
Unless the police officer is "able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous," his belief is not reasonable. Sibron v. New York, 392 U.S. 40 at 64, 88 S.Ct. 1889 at 1903, 20 L.Ed.2d 917 at 935 (1968); State v. Barney, 97-777 (La.App. 5th Cir.2/25/98), 708 So.2d 1205. The police officer need only establish that there was a "substantial possibility" of danger, not that it was more probable than not that the detained individual was armed and dangerous. State v. Barney, supra.
In the instant case, Sgt. McDaniels described defendant's behavior as very aggressive and very forceful. He felt that defendant's action of rolling forward in his chair and belligerent words were threatening, especially since he was in such close *386 proximity to defendant. Sgt. McDaniels testified that he merely touched defendant's waistline and pockets in order to protect himself and other individuals. At that point, he felt a hard object which he reasonably believed was a pistol. Officer Elliot described defendant's demeanor as offensive and not typical and stated that, shortly before this incident, he had received information that an individual at the Easy Street location was known to carry a firearm.
A pat down of defendant was justified to insure the officers' safety. Furthermore, the officer was then justified in seizing the weapon "until the completion of the questioning, at which time he shall either return it, if lawfully possessed, or arrest such person." La.C.Cr.P. art. 215.1(C). Under these circumstances, the actions of the Shreveport police were reasonable and justified. This assignment of error is without merit.

DECREE
The defendant's conviction is AFFIRMED.