|,THOMAS F. DALEY, Judge.
The plaintiffs, Heman and Joanna Le-Blanc, have appealed the jury verdict claiming fault was incorrectly apportioned and damages are inadequate. For the reasons that follow, we affirm.
FACTS:
The plaintiff, Heman LeBlanc, was injured when he was struck by a school bus that was attached to a wrecker driven by the defendant, Anthos “Boy” Williams. The accident occurred at Williams’ shop as Williams was backing the bus under his work area. LeBlanc had gone behind the bus next to the front door of the shop. LeBlanc was crushed between the bus and the doorframe. LeBlanc sustained serious injuries including several rib fractures, a liver laceration, renal, cardiac, and pulmonary contusions, eye hemorrhages, and a fractured left arm.
LeBlanc filed suit against Williams’ insurer, Western Heritage Insurance Company. Following a jury trial, the jury found LeBlanc 82% at fault and Williams 18% at fault. LeBlane’s total award of $314,000.00 was reduced 82% by |3the trial court to $56,520.00. Joanna LeBlanc was awarded $50,000.00 for loss of consortium that was also reduced 82% to $9,000.00. Plaintiffs’ Motions for JNOV and New Trial were denied by the trial court. This timely appeal followed.
LAW AND DISCUSSION:
In their first Assignment of Error, the plaintiffs claim the trial judge erred prior to trial by failing to grant a judgment on liability when all parties agreed that there was no genuine issue of material fact. Plaintiffs explained that both parties filed Motions for Summary Judgment that were denied by the trial court.
The denial of a Motion for Summary Judgment is reviewable under this Court’s supervisory jurisdiction. The record does not indicate that a Writ of Review was taken by either party following the denial of their respective Motions for Summary Judgment. As provided for in Code of Civil Procedure Article 968, an appeal does not lie from the court’s refusal to grant summary judgment. Accordingly, this Assignment of Error is without merit.
In their second Assignment of Error, plaintiffs contend that the jury erred in the allocation of fault. Specifically, plaintiffs argue that a backing motorist is required to exercise a high degree of care and if the driver of a backing vehicle could have reasonably avoided the accident, he is responsible for injuries caused when he strikes a pedestrian. Plaintiffs contend that had the passenger in the wrecker *84 been asked to act as a flagman, the accident could have been avoided.
Defendants respond that Williams’ failure to walk around the back of the bus prior to backing up or failing to have a flagmen is not negligence per se. Citing the testimony of LeBlanc that he knew he was in Williams’ blind spot and turned his head away from the incoming bus as the bus approached him, defendants contend the jury’s allocation of fault is supported by the evidence.
4 The long-standing, well-settled rule of law is that a Court of Appeal may not set aside a jury’s finding of fact unless there is manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). The Court of Appeal may not reverse the jury’s findings if the jury’s findings are reasonable in light of the entire record and are supported by the record, even if the appellate court feels it would have ruled differently. Id.
In the case before us, LeBlanc testified that he and Williams had been friends for 50 years. He went to Williams’ repair shop several times a week. He had seen Williams back school busses up under the canopy of his repair shop on numerous occasions and had never seen Williams hit anything. LeBlanc testified that on the day of the accident, he went to Williams’ shop to have a tire on his boat trailer repaired. As he approached the shop, Williams was backing up the wrecker with a school bus behind the wrecker. LeBlanc waved at Williams, parked his truck, got the tire out of the truck and proceeded to the front door of the shop. He knew the shop was closed because Williams always closed the shop when there was no one else present and he had to leave. LeBlanc explained that he walked to the front door and put the tire on a 55-gallon drum. When he put the tire on the drum, Williams was backing up. LeBlanc put his back to the door and watched Williams back up. As Williams continued to back up, LeBlanc turned his head to take the valve cap off of the valve stem; he was no longer looking at Williams backing up. LeBlanc then stated that he got jammed between the doorframe and the bus. He recalled seeing Williams come to him af-terwards as he was lying on the ground. On cross-examination, LeBlanc admitted that Williams could not see him because the wrecker was on an angle. He further testified that he never tried to signal Williams, as the bus got closer.
Williams testified that he had a contract with the school board to repair busses. He had driven a bus for 20 years and obtained his first wrecker in 1963. |B He explained that when he is backing a bus into his shop under the canopy, he backs up slowly, looking in the mirrors. He explained that if the wrecker is on an angle, it is hard to see the tail end of the bus. Williams testified that on the day of the accident, he saw LeBlanc pass in his truck, so he stopped backing up to make sure LeBlanc did not pull behind the bus. Once he saw LeBlanc pass the shop, he started backing up. Williams testified that he did not see LeBlanc park his truck or get out of his truck. Williams testified that when he is backing a bus under his canopy, whether or not he can see the front door of his shop depends on the angle he is backing. Williams testified that after he finished backing up, he got out of the wrecker to let the bus down. It was at that point he saw LeBlanc lying on the ground. LeBlanc told Williams that he hit him, but Williams was unsure what hit LeBlanc.
Had this Court been the finder of fact we would not have assessed LeBlanc with 82% fault. However, based on this testimony, we find there is evidence in the record to support the jury’s allocation of *85 fault. Hence we cannot say that the allocation of fault was manifest error. Le-Blanc put himself in a position of danger. He acknowledged that he was in Williams’ blind spot and remained there. As the bus got closer to LeBlanc, rather than focus on the bus, he turned to remove the cap from the valve on his tire. He gave no warning to Williams to let him know where he was. In fact, it is clear from Williams’ testimony that Williams was completely unaware that LeBlanc was behind him. LeBlanc was familiar with Williams’ repair shop and placed himself in a position of danger.
In their third Assignment of Error, plaintiffs contend the trial judge erred in failing to grant a Motion for New Trial or JNOV. Plaintiffs contend that the jury could not understand or apply the law and given the facts of this case, the jury’s verdict is contrary to law.
A JNOV should only be granted when the evidence adduced at trial points so overwhelmingly in favor of one party that a reasonable person could not reach a contrary result. Vasalle v. Wal-Mart Stores, Inc., 01-0462 (La.11/28/01), 801 So.2d 381. If there is evidence that a reasonable person could reach a different conclusion, the motion should be denied; all reasonable inferences should be resolved in favor of the non-moving party. Id. We find that the jury’s allocation of fault is supported by the evidence, therefore, the trial judge correctly denied plaintiffs’ Motion for JNOV.
Plaintiffs also contend the trial court erred in denying their Motion for New Trial, arguing that the jury verdict is contrary to the law and evidence. Additionally, plaintiffs argue that the jury failed to follow the trial judge’s instructions in calculating damages. Plaintiffs contend that the jury actually awarded plaintiff $2,024,344.25 and reduced that amount by 82% to arrive at the figure of $364,000.00. They argue the trial judge was unaware that the award had already been reduced and the trial judge reduced the $364,000.00 by 82%. In support if their position, plaintiffs submitted affidavits signed by three jurors attesting that that juror concurred with the other jurors in awarding a total of $2,024,344.25 and that amount was reduced by 82% to arrive at the amount of $364,000.00. These three jurors further attested that it was unclear that they should not have deducted the amount by the plaintiffs’ percentage of negligence and that they did not realize that the trial judge would make the appropriate reduction.
A new trial should be granted where: (1) the verdict or judgment appears clearly contrary to law and evidence; (2) important evidence is discovered after trial; or (3) the jury was bribed or behaved improperly so that impartial justice was not done. C.C.P. art.1972. Additionally, article 1973 provides that a new trial may be granted “in any case if there is good ground therefore, except as otherwise 17provided by law.” A trial judge has broad discretion in the granting or denying of a Motion for New Trial. The appellate standard of review of the ruling on a Motion for New Trial is whether the trial judge abused his discretion. Martin v. Heritage Manor South, 00-1023 (La.4/3/01), 784 So.2d 627.
In denying plaintiffs’ Motion for New trial, the trial court noted that our jurisprudence prohibits affidavits and other testimony by jurors to be used as evidence to impeach the jury’s verdict. Uriegas v. Gainsco, 94-1400 (La.App. 3 Cir. 9/13/95), 663 So.2d 162, unit denied, 664 So.2d 458 (La.12/15/95). We agree.
Article 606 of the Louisiana Code of Evidence provides:
*86 B. Inquiry in to validity of verdict or indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury’s deliberations or to the effect of anything upon his or any other juror’s mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether any outside influence was improperly brought to bear upon any juror, ... Nor may his affidavit or evidence of any statement by him concerning a matter which he may be precluded from testifying be received for these purposes.
This rule is necessary to protect the sanctity and privacy of jury deliberations. “One reason for this rule is that if, after being discharged and mingling with the public, jurors are permitted to impeach verdicts which they have rendered, it would invite tampering with jurors and would place it in the power of a dissatisfied or corrupt juror to destroy a verdict to which he had deliberately given his assent under the sanction of oath.” Parker v. Centenary Heritage Manor Nursing Home, 28,401 (La.App.6/26/96), 677 So.2d 568, 574, writ denied, 96-1960 (La.11/1/96), 681 So.2d 1271.
There has been no showing of an outside influence that improperly influenced any juror that would allow the introduction of juror testimony in this |scase. Furthermore, the record indicates that the jury was properly instructed as to the law to be applied in this case. While the trial judge instructed the jury that recovery of an injured person who has contributed to his own injury must be decreased by the percentage of fault attributable to him, the judge never instructed the jury as to who was to decrease the award. The judgment states that the awards were made without deducting any sums assigned to either party. The actual jury interrogatories are not contained in the record. Based on the record before us, we find the trial judge correctly denied plaintiffs’ Motion for New Trial.
Plaintiffs also assign as error the amount of damages awarded by the jury, contending that given the facts of this case, an award of $364,000.00 was a clear abuse of discretion.
Mr. and Mrs. LeBlanc, as well as three of Mr. LeBlanc’s treating physicians, testified as to Mr. LeBlanc’s injuries. Upon admission to the hospital, Mr. LeBlanc had several rib fractures, a liver laceration, renal, cardiac, and pulmonary contusions, eye hemorrhages, and a fractured left arm. His arm was surgically repaired with the insertion of pins and screws. The remaining injuries healed without intervention. He spent two weeks in the hospital including eight days in intensive care. He had difficulty sleeping when he returned home. Mr. LeBlanc was also treated for depression. Additionally, Mr. and Mrs. LeBlanc testified as to the many activities Mr. Le-Blanc no longer participated in following this accident.
The jury awarded $214,000.00 in general damages and $100,000.00 in special damages. While we find this award to be very low, it is not so low that we find it to be an abuse of the jury’s vast discretion.
Mrs. LeBlanc was awarded $50,000.00 for loss of consortium. Defendant complains that this is an excessive award. However, defendant has not filed an appeal, nor has he answered plaintiffs’ appeal. Accordingly, this issue will not be addressed.
*87 |3For the foregoing reasons the judgment of the trial court is affirmed.

AFFIRMED.