STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

12-256

STATE OF LOUISIANA

VERSUS

MICHAEL WAYNE COLLINS

**********
APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, DOCKET NO. 295,345
HONORABLE JOHN C. DAVIDSON, DISTRICT JUDGE
**********

SYLVIA R. COOKS
JUDGE

**********

Court composed of Judges Sylvia R. Cooks, Marc T. Amy, and Phyllis M. Keaty.

AFFIRMED.

Paula C. Marx
Louisiana Appellate Project
P.O. Box 80006
Lafayette, LA  70598-0006
(337) 991-9757
**ATTORNEY FOR APPELLANT/DEFENDANT,**
**Michael Wayne Collins**

James C. "Jams" Downs
District Attorney, Rapides Parish
John T. Giordana
Assistant District Attorney, Rapides Parish
P.O. Drawer 1472
Alexandria, LA  71309
(318) 473-6650
**ATTORNEYS FOR APPELLEE, State of Louisiana**

**Cooks, Judge.**

## FACTS AND PROCEDURAL HISTORY

Corporal Chris Cooper (Cooper) testified that he went to 1505 Huffman Street on August 7, 2008, after police received numerous complaints about drug activity at that address. According to his testimony, upon arrival at the residence, police observed Michael Wayne Collins (Defendant) sitting on the porch. His leg was in a boot as he was recovering from a gunshot wound. The officers observed at least one other person quickly leave the porch and go into the residence. While standing outside the fenced area on the public sidewalk, the officer asked Defendant if he could speak with him. Defendant invited the officer to speak with him on the porch. As the gate was locked, or would not open, Cooper jumped the fence. Cooper then went onto the front porch and asked Defendant if he had any drugs on him. Defendant replied he did not, and told the officer he could search him. The officer searched Defendant's person and found marijuana on Defendant in the pocket of his pants, and cocaine in the immediate vicinity. Cooper further testified Defendant admitted the marijuana and cocaine were his.

Additionally, Cooper testified Defendant's mother exited the residence, invited police inside, and told police they could remove anything illegal from inside the residence. He testified the police possibly conducted surveillance before arriving at the residence, as it was standard procedure to do so, though he could not specifically recall such surveillance.

Corporal Chris Wolf (Wolf) testified the police received numerous complaints regarding 1505 Huffman Street and went to that residence on August 7, 2008 in response to those complaints. Wolf further testified the area was known to

the officers as a high crime area for drug activity. He too testified the yard in front of the residence was fenced.

According to Wolf, Cooper asked Defendant if he had anything illegal on his person, and Defendant responded: "I don't have anything on me, you can search me, I have nothing." He testified the officers then jumped the locked fence and searched Defendant. He too testified the police found a small amount of marijuana in Defendant's pocket and a small amount of cocaine in the immediate area near Defendant.

Wolf also testified there was a woman, later identified as Rosie Collins (Rosie), inside the residence, and that she allowed police to enter the residence and invited them to clear it of any other narcotics.

Wolf further testified he observed a car stop in front of the residence briefly and then drive off, and he observed in plain view quite a bit of trash in the yard in front of the residence including several torn off corners of small plastic bags. According to Wolf, these things went hand in hand with drug activity. He admitted, however, this information was not set forth in the police report.

Cedric Collins (Cedric), Defendant's brother, testified he lived at 1505 Huffman Street with his mother, brother, and girlfriend, Renita Martin. On the date in question, he and his girlfriend were pulling up to the residence when the police officers arrived. He could not hear the exchange between Defendant and the officers.

Rosie, Defendant's mother, testified she was visiting 1505 Huffman Street on the date in question, and that it was Defendant's residence. According to Rosie, she did not give the police officers permission to enter the residence. She testified she heard a noise outside, saw the police officers jump the fence, and then opened

2

the door of the residence at which point the police officers entered the residence uninvited. Rosie admitted she did not hear any conversation between Defendant and the police officers.

Defendant testified he leased the residence at 1505 Huffman Street, and his mother did not reside there. He also testified he never gave police permission to jump the fence and come onto his property.

Defendant maintained the gate was locked. According to him, he was sitting on his porch talking on his cell phone when the police arrived. Defendant testified he asked police what "this" was about, and they responded that they would show him what "this" was all about, and then jumped the fence uninvited. He admitted to the officers he smoked marijuana and he possessed marijuana on the night in question. The State conceded there was no visible drug activity transpiring at Defendant's residence at the time they approached Defendant.

Defendant was charged by bill of information with possession of cocaine, a violation of La.R.S. 40:967, and possession of marijuana, third offense, a violation of La.R.S. 40:966.[1] The Defendant entered a plea of not guilty on March 6, 2009.

Defendant filed a motion to suppress evidence seized without consent and without a warrant. After hearing the testimony regarding the motion to suppress, the trial court took the matter under advisement. The trial court subsequently denied the motion to suppress, stating:

> For oral reasons this date handed down, the Court, after carefully reviewing the Motion to Suppress filed by Michael Collins, the testimony of the witnesses and considering the law that governs this matter, finds that Michael Collins did give permission for the law enforcement officers to enter his property and conduct the search.

---

[1] A motion to amend the bill of information was granted on April 7, 2010. The amendment pertains to count one. We note no differences between the original bill and the amended bill.

3

On September 22, 2011, the jury returned a verdict of guilty of possession of marijuana, third offense. Defendant was previously convicted of theft of property having a value over $500.00 in August 2000; possession of a Controlled Dangerous Substance (CDS) Schedule I in 2003; possession with intent to distribute a CDS, Schedule II and possession of marijuana, second offense, in 2005; and distribution of a CDS, Schedule II in 2006.

The trial court declared a mistrial as to the charge of possession of cocaine. On November 14, 2011, Defendant was sentenced to fifteen years at hard labor. Defendant filed motions to reconsider sentence on November 16 and 17, 2011. Both were subsequently denied. A motion for appeal was filed on November 16, 2011, and was granted.

Defendant raises two assignments of error asserting his sentence is excessive, and asserting the trial court erred in denying his motion to suppress.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there are no errors patent.

## LEGAL ANALYSIS

In his second assignment of error, Defendant contends the police officers conducted a non-consensual search when they gained entry to his front porch by jumping over the fence with a locked gate. Thus, he asserts, the trial court erred in denying his motion to suppress evidence seized without a warrant.[2]

> The State bears the burden of proving the admissibility of the evidence seized without a warrant when the legality of a search or seizure is placed at issue by a motion to suppress evidence.

---

[2]We address this assignment of error before the Defendant's excessive sentence claim, as a finding that the evidence should be suppressed would preclude a review of his sentencing claim.

4

La.C.Cr.P. art. 703(D).  A trial court's decision relative to the suppression of evidence is afforded great weight and will not be set aside unless there has been an abuse of that discretion.  *State v. Wells*, 2008-2262, p. 5 (La.7/6/10); 45 So.3d 577, 581.

*State v. Martin*, 11-82, p. 5 (La. 10/25/11), 79 So.3d 951, 955 (footnote omitted).

Cooper testified at the hearing on the motion to suppress, and reiterated at trial, that the police went to the residence at 1505 Huffman Street because of calls regarding potential drug activity.  Cooper was not one hundred percent sure surveillance of the residence was done, but believed some surveillance was done as it was standard procedure to do so.

Cooper was questioned about approaching Defendant as follows:

Q.  And please explain that contact. Where were you when the contact was made and where was he when the contact was made?

A.  He was still sitting on the porch, and, ahm, I was standing on the sidewalk in front of the house. Ah, I called out to 'im [sic], I said: "Michael, let me talk to you for a minute". He said: "No, you come here". So with that, I said, okay, and I went to him.

Q.  So he invited you to him.

A.  Yes he did.

Q.  Silly question, did he walk out and open the gate for you?

A.  No he did not.  Ah, he said you come here, I attempted to . . . I said, okay, I attempted to open the gate; it wouldn't open, so I just jumped over it.

Q.  Okay.  And then what did you do?

A.  I approached 'im [sic] on the porch, by that time he's standing up and putting his hands (two words not distinguishable), he said, I don't have anything illegal on me, you can search me, as he stood up and put his hands up like this.

At trial, Rosie Collins testified she lived at 1505 Huffman Street on August 7, 2008.  However, she testified at the hearing on the motion to suppress that she did not reside at that residence.  Rosie testified at both the hearing and the trial that

5

she did not hear the conversation between the police officers and Defendant. She further testified when she opened the door of the residence the officers entered. She asserted both times that she did not invite the officers to enter the residence as it belonged to Defendant. Rosie was previously convicted of an offense involving a CDS, Schedule II, in 2005.

Defendant contends the trial court erred in denying his motion to suppress because the police gained entry to his front porch by jumping over a gated fence without any suspicion of illegal activity and intruded into his "private time." He asserts the front porch of a private residence falls within the curtilage of the home and is, therefore, accorded constitutional protections under the Fourth Amendment of the United States Constitution. Defendant acknowledges there are cases that indicate a front porch does not enjoy the same protections as a home which can be approached by knocking on the door to seek entry. He asserts, however, these cases are not applicable because his yard was fenced, and the gate was locked making his front porch not readily accessible.

Defendant also acknowledges the trial court found he gave police permission to enter his property and conduct the search despite his denying he gave consent to enter his gated and fenced yard. He argues that any alleged consent would have been involuntary given the yard was fenced, the gate locked, and that he was simply sitting on his front porch. He asserts that, even assuming consent was given, the consent was not really any consent at all because he did not think it would actually allow police to come onto his property and search him.

The State asserts the evidence established Defendant voluntarily consented to the officers entering into his yard to search him. In support of this contention, the State relies on the following jurisprudence.

6

> [M]ere communications between officers and citizens implicate no Fourth Amendment concerns where there is no coercion or detention. [*United States v. Watson*, 953 F.2d 895 (5th Cir. 1992), *cert. denied*, 504 U.S. 928, 112 S.Ct. 1989 (1992)]; *State v. Britton*, 93-1990 (La.1/27/97); 633 So.2d 1208, 1209 (noting that police have the same right as any citizen to approach an individual in public and to engage him in conversation under circumstances that do not signal official detention).

*State v. Fisher*, 97-1133, pp. 4-5 (La. 9/9/98), 720 So.2d 1179, 1183. Further, "a law enforcement officer may approach any person and ask simple questions without a requirement of reasonable suspicion of criminal activity." *Martin*, 79 So.3d at 956.

> Knock and talk investigation "involves officers knocking on the door of a house, identifying themselves as officers, asking to talk to the occupant about a criminal complaint, and eventually requesting permission to search the house." *State v. Reinier*, 628 N.W.2d 460, 466 (Iowa 2001). "If successful, it allows police officers who lack probable cause to gain access to a house and conduct a search." *Id.* Both federal and state appellate courts which have considered the question, including the United States Court of Appeals for the Seventh Circuit, have concluded that the knock and talk procedure does not, per se, violate the Fourth Amendment. *See Scott v. State*, 347 Ark. 767, 67 S.W.3d 567, 575 (2002); *see also United States v. Johnson*, 170 F.3d 708, 720 (7th Cir.1999); *United States. v. Jones*, 239 F.3d 716, 720 (5th Cir.2001); *Scott v. State*, 366 Md. 121, 782 A.2d 862, 872-73 (2001); *People v. Frohriep*, *supra* [247 Mich.App. 692, 637 N.W.2d 562 (2001)].

> "Though the 'knock and talk' procedure is not automatically violative of the Fourth Amendment, it can become so." *Keenom v. State*, *349 Ark.* 381, 80 S.W.3d 743, 747 (2002). The constitutional analysis begins with the knock on the door. *Scott v. State*, 366 Md. 121, 782 A.2d 862, 867 (2001*). The prevailing rule is that, absent a clear expression by the owner to the contrary, police officers, in the course of their official business, are permitted to approach one's dwelling and seek permission to question an occupant*. *Id.* at 867-68.

> Louisiana jurisprudence allows the "knock and talk" approach of police. *See, State v. Davenport*, 32-329 (La.App.2d Cir.9/22/99), 801 So.2d 380; *State v. Green*, 598 So.2d 624 (La.App. 3d Cir.1992). Knocking on a door is an "age old request for permission to speak to the occupant." *State v. Haywood*, 00-1584 (La.App.5 Cir.3/28/01), 783 So.2d 568, *quoting State v. Sanders*, 374 So.2d 1186, 1188 (La.1979). When a door is opened in response to a knock, it is a

consent of the occupant to confront the caller, and there is no compulsion, force or coercion involved. *Id.*

*State v. Warren*, 05-2248, pp. 6-7 (La. 2/22/07), 949 So.2d 1215, 1221-22 (emphasis added).

> Consent to search is one of the recognized exceptions to the warrant requirement . . . . *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). When the state relies on consent to justify a warrantless search, it has the burden of proving the consent was freely and voluntarily given. Voluntariness of consent is a question of fact which the trial judge must determine based on a totality of the circumstances. *State v. Edwards*, 434 So.2d 395 (La.1983); *State v. Jennings*, 39,543 (La.App.2d Cir.3/2/05), 895 So.2d 767, *writ denied*, 05-1239 (La.12/16/05), 917 So.2d 1107; *State v. Paggett*, 28,843 (La.App.2d Cir.12/11/96), 684 So.2d 1072.

> *State v. Thompson*, 46,039, pp. 7-8 (La.App. 2 Cir. 2/23/11), 58 So.3d 994, 1000.

> Furthermore, voluntariness is a question for the trier of fact to determine based on the totality of the circumstances and is to be given great weight upon appellate review. *State v. Snelling*, 09-1313 (La.App. 3 Cir. 5/5/10), 36 So.3d 1060, *writ denied*, 10-1301 (La.12/17/10), 51 So.3d 16.

*State v. Allen*, 11-610, pp. 27-28 (La.App. 3 Cir. 12/7/11), 79 So.3d 1220, 1240, *writ denied*, 12-413 (La. 12/12/12). __SO.3d__.

We find the jurisprudence supports the trial court's decision. In *State v. Massey*, 94-1388 (La.App. 4 Cir. 4/26/95), 653 So.2d 1372, plain clothes police officers received a tip that drugs were being sold out of a particular residence. Police walked up to the house without identifying themselves. The occupant of the residence was sitting outside and, as the officers approached, he moved aside and said, "They're in back." *Id.* at 1374. The fourth circuit considered this valid consent to enter the residence.

In *State v. Hudnall*, 39,723 (La.App. 2 Cir. 5/11/05), 903 So.2d 605, an officer testified he asked the defendant if he could see a container the defendant had in his hand. The defendant handed the container to the officer, and the officer asked the defendant what was in the container. The defendant told the officer he would know when he opened it. The second circuit found the record supported the trial court's finding the defendant consented to the warrantless search of the container.

The officers in this case had the same right as any citizen to converse with Defendant from the sidewalk. Further, the police action at issue was similar to a knock and talk, and police did not need suspicion of illegal activity in order to speak to Defendant from outside the gate. The trial court made a finding of fact that Defendant voluntarily chose to respond to police questioning and invited police into his yard. The trial court made a credibility determination, choosing to discredit the testimony of Defendant and other defense witnesses. The credibility of witnesses is within the sound discretion of the trier of fact, and such credibility determinations should not be reweighed on appeal. Based on the testimony of Cooper and Wolf, which the trial court obviously found to be credible, the officers' entry onto Defendant's property and their search of Defendant were based on voluntary oral consent by Defendant to enter his yard and to search his person. Accordingly, we cannot say the trial court abused its broad discretion when denying the motion to suppress.

In his first assignment of error, Defendant contends his sentence is harsh and excessive considering the mitigating factors presented and the fact he was convicted of possessing a small amount of marijuana seized from his front pants pocket.

This court has set forth the following standard to be used when reviewing excessive sentence claims:

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.

*State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042, *writ denied*, 01-838 (La.2/1/02), 808 So.2d 331 (alteration in original) (citations omitted).

In order to decide whether a sentence shocks the sense of justice or makes no meaningful contribution to acceptable penal goals:

> [A]n appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La.7/6/00), 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La.5/31/96), 674 So.2d 957, 958.

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La.5/30/03), 845 So.2d 1061.

*State v. Clayton*, 10-1303, pp. 3-4 (La.App. 3 Cir. 5/4/11), 64 So.3d 418, 422, *writ denied*, 11-1015 (La. 11/4/11), 75 So.3d 923.

10

Defendant was convicted of possession of marijuana, third offense. At the time of the offense, possession of marijuana, third offense, was punishable by imprisonment with or without hard labor for not more than twenty years. La.R.S. 40:966(E)(3). Defendant was sentenced to fifteen years at hard labor.

At the sentencing hearing, the trial court stated the following:

> I note that Mr. Collins has the following fel [sic] , felony convictions: Docket Number 257,673 Possession of CDS II, date of that conviction was August 15th, 2000; Docket Number 258,078 Theft Greater Than Five Hundred, the date of that conviction was August 15th, 2000; Docket Number 276,887 Possession of Marijuana Second, date of that conviction was July 18th, 2005; Docket Number 276,887 Possession to Distribute [sic] CDS II, the date of that conviction was, ah, July 18th, 2005; and Docket Number 282,985 Distribution of CDS II, and that date of that conviction was October 16th, 2006. Mr. Collins was convicted of a charge in this matter resulting from an arrest on August 7, 2008. His criminal history demonstrates there is an undo [sic] risk that during a period of a suspended ser [sic], sentence or possible probation he would commit another crime. Certainly Mr. Collins has not shown any ability to function in society without committing a crime. Moreover his continued criminal conduct demonstrates a need for correctional treatment in a custodial environment. Mr. Collins is twenty-nine years old, but yet has an extensive record of felony convictions; he's not demonstrated any potential for rehabilitation, but tremendous potential for harm due to his continued criminal activity, particularly distribution of drugs. Though the offense for which he's been convicted is not a distribution charge, this Court does note that the previous, does note the previous convictions for distribution, or possessing with intent to distribute. In mitigation I have considered the age of the Defendant and the non-violent nature of the Possession of Marijuana, Third Offense. Unfortunately, ah, Mr. Collins' criminal conduct is a result of circumstances which would likely reoccur if he were not incarcerated, and he's not shown any ability to respond affirmatily [sic] (phonetic), affirmatively to probationary treatment. Based on a consideration of all of these factors, Mr. Collins, I'm gonna [sic] sentence you to fifteen years at hard labor.

Defendant asserts his criminal history does not reflect any violent offenses; he is twenty-nine years old; he is the sole provider for his two young children; his fiancée was pregnant at the time the motion to reconsider sentence was filed; and the amount of marijuana involved was small. For these reasons, Defendant contends his sentence is excessive.

11

The State contends, and the trial court found, Defendant has not shown any ability to function in society without committing crimes, as his criminal history includes five felony convictions within a six-year period.

Indeed, this is Defendant's sixth felony conviction and five of those convictions are drug offenses.  Under the facts of this case we cannot say Defendant's sentence of fifteen years is excessive.  We find this assignment of error lacks merit. Accordingly, the conviction and sentence of the defendant, Michael Wayne Collins, for the offense of possession of marijuana, third offense, are affirmed.

**AFFIRMED.**