# IN THE COURT OF APPEALS OF IOWA

No. 17-0913
Filed August 1, 2018

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**MEJDIL AHMETOVIC,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, David N. May, Judge.

Mejdil Ahmetovic appeals his convictions of possession of a controlled substance with intent to deliver and failure to affix a drug-tax stamp. **AFFIRMED.**

Kent A. Balduchi of Balduchi Law Office, P.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Bridget A. Chambers, Assistant Attorney General, for appellee.

Heard by Danilson, C.J., and Mullins and McDonald, JJ.

**MULLINS, Judge.**

Mejdil Ahmetovic appeals his convictions of possession of a controlled substance with intent to deliver and failure to affix a drug-tax stamp. He asserts the district court erred in denying his motion to suppress evidence, contending the warrantless traffic stop and subsequent searches of his pocket and an automobile in which he was a passenger violated his constitutional rights against unreasonable searches and seizures under the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution.

## I. Background Facts and Proceedings

The following facts can be gleaned from the suppression record. Officer Wilshusen is an officer in the Des Moines Police Department's narcotics unit. On June 3, 2016 at approximately 6:00 p.m., Wilshusen received information from a confidential informant[1] that Ahmetovic would be in a "black Volkswagen vehicle" in a particular McDonald's restaurant parking lot at approximately 8:30 p.m. the same evening with approximately one ounce of cocaine in his possession.[2] Wilshusen was off duty at the time he received this tip, so he relayed the information to two officers assigned to the department's summer enforcement team,[3] Officers McCarthy and Becker.

---

[1] Wilshusen had prior dealings with this confidential informant and the informant has provided Wilshusen credible information in the past. Wilshusen testified on cross-examination that the confidential informant was receiving favorable treatment in a pending case in exchange for the provision of information.

[2] Prior to receiving this information, Wilshusen was familiar with Ahmetovic, as there was an ongoing investigation concerning his sale of cocaine in the Des Moines area.

[3] The summer enforcement team is a unit tasked with targeting drug, gang, and gun activity.

McCarthy and Becker's shift started at 8:00 p.m., at which time Wilshusen followed up with them to advise the information was still valid. McCarthy and Becker obtained a photograph of Ahmetovic and then "drove straight to the vicinity of the location that [Ahmetovic] was supposed to arrive at." McCarthy and Becker arrived at the location at 8:05 or 8:10 p.m. At approximately 8:50 p.m., a "black hatchback Volkswagen" arrived at the McDonald's parking lot. After the vehicle parked, the officers placed their squad car behind the vehicle and exited their squad car. As the officers were exiting their vehicle, McCarthy observed the individual in the front passenger seat "ben[d] over kind of abruptly towards the floorboard." The officers approached the Volkswagen, Becker on the driver side and McCarthy on the passenger side. The vehicle contained two occupants, and the individual seated in the front passenger seat was identified as Ahmetovic. During the course of their investigation, the officers learned Ahmetovic was not the owner of the subject vehicle. The driver was merely giving Ahmetovic a ride to a party they planned to attend that evening.

Ahmetovic subsequently complied with McCarthy's request that he exit the vehicle. McCarthy then performed a pat-down, weapons search of Ahmetovic's person, during which McCarthy "noticed a hard bulge in the right coin pocket of [Ahmetovic's] pants." McCarthy testified: "The immediate feel of it, based on my experience and the specific information we were given from Officer Wilshusen, at that point I believed it to be cocaine." He further testified on cross-examination, "Based on the touch, I was very certain it was probably a narcotic." McCarthy "stayed on the item," pressed it with his fingers to draw Ahmetovic's attention to it, and asked Ahmetovic what it was; Ahmetovic responded he did not know.

McCarthy asked, "Can I get it?" upon which Ahmetovic responded, "Yeah."[4] McCarthy removed the object, which appeared to be, and subsequently tested positive as, cocaine. Ahmetovic admitted the substance belonged to him. McCarthy also found more than $1000 in cash on Ahmetovic's person.

Ahmetovic was placed under arrest and advised of his *Miranda* rights. During a subsequent search of the Volkswagen, the officers discovered "a much larger baggie of cocaine" underneath the front passenger seat, where Ahmetovic was sitting. Ahmetovic admitted the cocaine belonged to him.

Ahmetovic was charged by trial information with possession of cocaine with intent to deliver and failure to affix a drug-tax stamp. Ahmetovic subsequently moved to suppress all of the drug evidence obtained as a result of the searches of his person and the vehicle, contending the warrantless searches were in violation of his constitutional rights under the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution. Following a suppression hearing, the district court denied Ahmetovic's motion. The court

---

[4] In his testimony at the suppression hearing, Ahmetovic denied McCarthy requested permission to remove the item and that he gave McCarthy permission to remove the item. The district court made an express credibility finding in favor of McCarthy's testimony that Ahmetovic consented to the removal of the item. The court based its credibility finding on its "evaluation of each witness's live testimony" and Ahmetovic's "motivations in these suppression proceedings." As discussed below, we give deference to the district court's credibility assessments. Furthermore, the video footage of the encounter, which was admitted into evidence at the suppression hearing, supports McCarthy's testimony. At the time of the encounter, Becker was wearing a microphone but McCarthy was not. At the time the drugs were found, McCarthy and Ahmetovic's verbal exchanges were not captured by Becker's microphone. However, moments before McCarthy removes a baggie containing a white substance from Ahmetovic's pocket, the video footage depicts McCarthy pausing near Ahmetovic's right pocket. McCarthy's expressions cannot be seen at this time, as Ahmetovic is in between the dash camera and McCarthy's face. However, shortly after McCarthy's pause near the right pocket, Ahmetovic is seen mouthing a one-word statement to McCarthy. Seconds later, McCarthy removes the cocaine from Ahmetovic's right pocket.

concluded the search of Ahmetovic's pocket was lawful because the nature of the item was "immediately apparent" to McCarthy or, alternatively, because the search was based upon valid consent. As to the search of the vehicle, the court concluded Ahmetovic—as a mere passenger with no possessory interest in the vehicle—lacked standing to challenge the search or, in the alternative, the search was lawful under the automobile exception.

Ahmetovic waived his right to a jury trial and stipulated to a bench trial on the minutes of evidence. The court found him guilty as charged. Ahmetovic appealed following the imposition of sentence.

## II. Standard of Review

"When a defendant challenges a district court's denial of a motion to suppress based upon the deprivation of a state or federal constitutional right, our standard of review is de novo." *State v. Storm*, 898 N.W.2d 140, 144 (Iowa 2017) (quoting *State v. Brown*, 890 N.W.2d 315, 321 (Iowa 2017)). "[W]e make 'an independent evaluation of the totality of the circumstances as shown by the entire record.'" *Brown*, 890 N.W.2d at 321 (quoting *In re Pardee*, 872 N.W.2d 384, 390 (Iowa 2015)). "We give deference to the district court's fact findings due to its opportunity to assess the credibility of the witnesses, but we are not bound by those findings." *Id.* (quoting *Pardee*, 872 N.W.2d at 390).

## III. Discussion

### A. Initial Seizure

Ahmetovic first appears to argue law enforcement was required to obtain a search warrant before stopping and seizing the vehicle and thereby seizing him.

Ahmetovic generally cites to Iowa Code section 808.3 (2016) to support his position.

However, that section, entitled "Application for *search* warrant," applies to searches, not to initial encounters with law enforcement or seizures such as a traffic stop. *See* Iowa Code § 808.3 (emphasis added); *see also State v. Tyler*, 830 N.W.2d 288, 292 (Iowa 2013) (noting a traffic stop amounts to a seizure). A search, whether pursuant to a warrant or an exigency exception to the warrant requirement, requires probable cause. *See* Iowa Code § 808.3 (requiring probable cause for search warrants); *State v. Gogg*, 561 N.W.2d 360, 368 (Iowa 1997) ("As a general rule, a search warrant requires probable cause."); *see also State v. Naujoks*, 637 N.W.2d 101, 108 (Iowa 2001) (noting warrant requirement is excepted for a "search based on probable cause and exigent circumstances").

To justify a traffic stop and briefly detain an individual for investigatory purposes, "the police need only have reasonable suspicion, not probable cause, to believe criminal activity has occurred or is occurring." *State v. Tague*, 676 N.W.2d 197, 204 (Iowa 2004); *accord Rodriguez v. United States*, 135 S. Ct. 1609, 1615 (2015) (noting only reasonable suspicion is required to detain an individual for investigatory purposes); *Navarette v. California*, 134 S. Ct. 1683, 1687 (2014); *State v. Pettijohn*, 899 N.W.2d 1, 15 (Iowa 2017). "Reasonable suspicion is a less demanding standard than probable cause," *Alabama v. White*, 496 U.S. 325, 330 (1990), and Ahmetovic does not argue the officers lacked the reasonable suspicion necessary to justify encountering him and his driver in the McDonald's parking lot. In fact, Ahmetovic conceded in oral argument that under the totality of the circumstances, when Ahmetovic arrived at the McDonald's parking lot, thus

verifying the confidential informant's tip, the officers had not only reasonable suspicion, but probable cause to detain Ahmetovic and his driver *and* conduct a search.

We conclude the police were not required to obtain a search warrant before they made contact with Ahmetovic and the driver of the vehicle. We reject Ahmetovic's arguments to the contrary.

B.    Search of Ahmetovic's Pocket

Ahmetovic next contends the evidence concerning or flowing from the cocaine found in his pocket during the *Terry*[5] pat-down search should be suppressed as obtained in violation of his constitutional rights. He concedes the *Terry* pat-down search was justified under the totality of the circumstances but contends the warrantless search of his pocket amounts to a constitutional violation.

"Warrantless searches are per se unreasonable if they do not fall within one of the well-recognized exceptions to the warrant requirement." *State v. Lowe*, 812 N.W.2d 554, 568 (Iowa 2012) (quoting *Naujoks*, 637 N.W.2d at 107). The exceptions to the warrant requirement include, among others, searches pursuant to valid consent and searches of items in plain view. *Naujoks*, 637 N.W.2d at 107; *see generally Schneckloth v. Bustamonte*, 412 U.S. 218 (1973) (consent searches); *Coolidge v. New Hampshire*, 403 U.S. 443 (1971) (plain-view doctrine). The plain-view exception has also been extended to include certain "plain-feel" situations:

---

[5] *See Terry v. Ohio*, 392 U.S. 1, 30 (1968) (noting officers are entitled "to conduct a carefully limited search of the outer clothing . . . in an attempt to discover weapons which might be used to assault" the officer or others).

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.

*Minnesota v. Dickerson*, 508 U.S. 366, 376–77 (1993).

As to the plain-feel exception, Ahmetovic forwards the following argument:

> McCarthy did not believe that the contents of [his] pocket contained a weapon. He did, however, continue to manipulate the contents of the pocket in an attempt to further discern what said contents might be. The additional manipulation by Officer McCarthy makes it clear that the contents of [Ahmetovic's] pocket were not immediately identifiable as narcotics. While absolute certainty may not be required, an item's incriminating nature is not "immediately apparent" if an officer is torn between multiple-choice options.

As did the district court, we find Ahmetovic's argument and its underlying factual assertions unsupported by the suppression record. The evidence presented reveals that, while McCarthy was conducting a brief weapons search of Ahmetovic's person, he "noticed a hard bulge in the right coin pocket of [Ahmetovic's] pants." McCarthy testified: "The immediate feel of it, based on my experience and the specific information we were given from Officer Wilshusen, at that point I believed it to be cocaine." He further testified on cross-examination, "Based on the touch, I was very certain it was probably a narcotic." No evidence or testimony was presented at the suppression hearing that McCarthy, in any way, shape, or form, "manipulated the contents of the pocket in an attempt to further discern what said contents might be" before he reached his conclusion. Rather, the evidence shows that, when McCarthy noticed the bulge, based on his training, experience, and the information he received, it was immediately apparent to him

that the item was contraband. It was not until after McCarthy reached this conclusion that he "stayed on the item" and pressed it with his fingers to draw Ahmetovic's attention to it before questioning him what it was.

In the course of a lawful *Terry* search, McCarthy felt an object that was immediately apparent to him to be contraband, and there was therefore no invasion of Ahmetovic's privacy beyond that already authorized by the *Terry* search. We conclude the warrantless search of Ahmetovic's pocket was valid under the plain-feel exception to the warrant requirement.

We choose to continue our analysis of the search, however, because this case alternatively contemplates the consent exception to the warrant requirement. "A warrantless search conducted by free and voluntary consent does not violate" constitutional protections against unreasonable searches. *State v. Reinier*, 628 N.W.2d 460, 465 (Iowa 2001). Consent cases pose two questions: (1) whether the consent was given and (2) if so, whether it was given voluntarily. *Id.* As he did in his testimony at the suppression hearing, Ahmetovic "denies that he consented to the removal of the contents of his pocket." Upon our de novo review and giving deference to the district court's credibility findings, we conclude the consent was manifested. Whether the consent exception applies to validate this warrantless search therefore turns on whether the consent was voluntary.

"Consent is considered to be voluntary when it is given without duress or coercion, either express or implied." *Id.* Voluntariness of consent is "a question of fact based upon the totality of the relevant circumstances." *Id.* Consideration of the following factors is helpful in determining the voluntariness of consent: (1) the defendant's knowledge of the right to refuse consent, (2) "whether police asserted

any claim of authority to search prior to obtaining consent," (3) any "show of force or other types of coercive action," (4) the use of deception, (5) threats to obtain a search warrant, and (6) other illegal police action prior to the giving of consent. *Id.*

Although it is unclear whether Ahmetovic knew he could refuse consent, it is clear that the police did not assert any claim of authority to search, engage in a show of force or other types of coercive action, threaten or attempt to deceive, or engage in other illegal police action prior to the giving of consent. In weighing these factors, we conclude Ahmetovic's giving of permission to McCarthy to remove the contraband from his pocket was voluntary.

We conclude the warrantless search of Ahmetovic's pocket was valid under the plain-feel and consent exceptions to the warrant requirement. We therefore affirm the district court's denial of Ahmetovic's motion to suppress evidence concerning or flowing from the search of his pocket.

C.      Vehicle Search

Finally, Ahmetovic challenges the search of the vehicle, contending the application of the automobile exception to the warrant requirement is not "justified under the facts of this case." However, Ahmetovic does not challenge the district court's alternative conclusion that he, as a mere passenger with no possessory interest in the vehicle, lacked a reasonable expectation of privacy in the vehicle, and therefore lacked standing to challenge the search. *See Rakas v. Illinois*, 439 U.S. 128, 148–50 (1978); *State v. Haliburton*, 539 N.W.2d 339, 342–43 (Iowa 1995). Because Ahmetovic does not challenge that ground for validation of the search, we deem such an argument waived and affirm the district court. *See* Iowa R. App. 6.903(2)(g)(3). We decline to entertain Ahmetovic's request that we

examine the automobile exception's "application in light of technological advances since its creation 92 years ago," as our supreme court recently elected to retain the automobile exception when faced with the same request. *See Storm*, 898 N.W.2d at 156.

**IV.    Conclusion**

We affirm in all respects the district court's denial of Ahmetovic's motion to suppress.

**AFFIRMED.**